THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. AARON L. SIMON, PLAINTIFF IN ERROR.

Argued October 7, 1924—Decided February 2, 1925.

1. At the trial of a criminal indictment, the judge, at about ten P. M., finding that the jury were not likely to agree upon their verdict very soon, ordered them locked up for the night. The court room was cleared, and the defendant was told to go away and come back in the morning. At one o'clock in the morning the jury reported to the court officers that they had agreed, and, without sending for the judge, the defendant, or his counsel, the clerk took the verdict. So far as the record discloses, the clerk acted upon his own initiative in taking the verdict without being instructed so to do by the court. *Held,* that the receiving of the verdict by the clerk, under the circumstances recited, was error, and leads to a reversal of the judgment of conviction.

2. When the jury have retired to consider their verdict, they must remain entirely secluded, and no one except the court, or an officer sworn to attend them, should speak or communicate with them until their verdict is rendered. The presence of persons in the court room, where the jury were a part of the time before they agreed upon their verdict, and conversation with members of the jury even though on merely general topics, and even though such persons were court officers, was error, leading to a reversal of the judgment.

On writ of error to Passaic Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the defendant in error, *J. Willard De Yoe.*

For the plaintiff in error, *Weinberger & Weinberger* and *Ward & McGinnis.*

The opinion of the court was delivered by

PARKER, J.   The defendant was indicted for conspiring with his brother-in-law, Jacob Bloomfield, to procure life insurance from the Girard Life Insurance Company on the life of Bloomfield by making certain fraudulent representations to the company with respect to the health of Bloomfield, &c.   Bloomfield died shortly afterwards and before the indictment was found, and, consequently, it was against the defendant, Simon, alone.

The entire record is certified under section 136 of the Practice act, and we are favored with eighty-two assignments of error, which are identical with eighty-two causes for reversal.   Most of these are without substance, but our examination of the case leads us to the conclusion that there was error in the points hereinafter specified.

We find no substance in the claim that the indictment ought to have been quashed because Bloomfield was dead, and, therefore, could not be indicted or tried as a defendant. We have never understood that where two or more living persons enter into a criminal conspiracy that the survivor or

survivors become immune, because one of the conspirators happens to die before an indictment is found.

The admission of policies in another company, which were taken out about the same time, is argued, but the objections then made are inadequate to raise the points counsel undertakes to argue at this time.

We think there was fatal error in the procedure relating to the rendition of the verdict. The undisputed facts are that the jury was sent out at ten-thirty A. M. and remained out until ten P. M., at which time the judge came into court, and, finding the jury had not agreed, and that there was no special prospect of their agreeing, ordered them locked up for the night. Every one was put out of the court room at that time, including the plaintiff in error, who was told to go away and come back in the morning. But about one A. M. the jury reported to the court officers that they had agreed and, without sending for the plaintiff in error, or his counsel, or the judge, the clerk, or the assistant clerk, was sent for and came and took the verdict. There is nothing to show that the court directed the clerk to take the verdict then or at any time. In the morning the defendant and his counsel appeared and found that the case had been concluded during the night. Counsel moved to set aside the verdict on the grounds, among others, that the jury was released without an order of the court; that the defendant was deprived of his right to be present at the rendition of the verdict, and that the verdict was taken at an unauthorized time. We do not gather that it was urged as an additional ground that the clerk was not authorized to take the verdict without the instructions of the court, although it is perfectly clear that the clerk has no authority in that regard without such special instruction. *Pamph. L.* 1899, p. 218; *Comp. Stat.,* p. 1844, *pl.* 74-a. But apart from this, it is quite plain that while, normally, the defendant is supposed to wait in the court room for the verdict and to be present when it is rendered, and, if absent therefrom, is absent at his peril, nevertheless, in a case where the court has distinctly directed that the jury shall be locked up for the night and that the court room be

cleared, and the defendant, being out on bail, was required to leave the court room and told to come back in the morning, the defendant, under such circumstances, is under no obligation whatever to wait around the court room on a chance of the jury coming in before the time indicated by the court when the jury was locked up, and is, at least, entitled to notice if a verdict is to be taken before the time specified. Even in cases where the clerk is authorized to take the verdict, the statute just cited reserves to the defendant the right of polling the jury, and of this right the defendant was deprived in the present case, for section 74-a provides that "on the request of the defendant, or his counsel, or the state, the jury may be polled by the clerk or his said representative, and the verdict taken, as though in open court, before the judge or judges." It was therefore clear error to take the verdict and discharge the jury under the circumstances shown in this case, which are, so far as we can see, conceded.

We think, also, that there was error in the conduct of the jury and court officers during the night. It seems to be undisputed that during the evening the jury was turned loose in the court room in the presence of a number of court officers and free to discuss general topics with them; that there was a discussion of general topics and a telling of stories and other general conversation. It is claimed that the officers were on one side of the court room and the jury on the other, and that when the jury showed a disposition to confer about the particular case they were shut up in the jury room. This may have been innocent enough, so far as relates to the intent of the parties concerned, but a very similar performance was considered error, leading to a reversal in *State* v. *Unger,* 94 *N. J. L.* 495, where the court itself detailed an officer who had not been sworn to attend the jury, and very much in the capacity of a private detective. For these two errors, and especially that relating to the taking of the verdict by the clerk without giving the defendant an opportunity to be present, the judgment will be reversed. This makes it unnecessary to discuss in detail the other points argued.