13 N.J. Super. 449 (1951)
80 A.2d 641
IN THE MATTER OF THE APPLICATION OF DAVID TIERSON GRAHAM, FOR WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1951.
Decided May 2, 1951.
*450 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Arthur S. Lane argued the cause for appellant, State of New Jersey (Mr. Mario H. Volpe, Prosecutor of Mercer County, and Mr. Theodore D. Parsons, Attorney-General, attorneys; Mr. Eugene T. Urbaniak, Deputy Attorney-General, and Mr. Frank Lawton, Assistant Prosecutor, on the brief).
Mr. Robert E. Dietz argued the cause for petitioner.
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
The Law Division, on habeas corpus, by order entered November 20, 1950, set aside Graham's conviction upon an indictment for the high misdemeanor of incestuous conduct, R.S. 2:139-2, and the State appeals. The petition was brought three years after Graham was convicted and sentenced to the State Prison. Graham did not seek review by writ of error within the one year from the entry of judgment of conviction limited by R.S. 2:195-5 (cf. the present Rule 1:2-5(b)). The Law Division's order rested upon the conclusion that the trial court, the former Mercer General Sessions, was without jurisdiction to enter the judgment of conviction because "substantial *451 constitutional rights of the petitioner were violated at the time of his original trial in that, although he was then confined in jail, he was not present in court when the jury returned its verdict of guilty." See In re Rose, 122 N.J.L. 507 (Sup. Ct. 1939).
The jury's verdict was taken by the clerk late in the day of September 22, 1947, in the absence of the trial judge, although upon his direction given on the authority of R.S. 2:190-14, a practice now superseded by Rule 2:7-9 (a). Graham had been returned to jail when the jury retired and was not brought back to the courtroom when the jury came in with its verdict. Graham's counsel was also absent, but voluntarily. Cf. State v. Simon, 101 N.J.L. 11 (Sup. Ct. 1925).
From ancient times, a verdict rendered in the absence of the accused has been deemed a void verdict, but only as to treason, felony and crimes punishable by death or loss of member. "The verdict, whatever may be its effect, must, in all cases of felony and treason, be delivered in the presence of the defendant, in open court, and cannot be either privily given or promulgated while he is absent. And in all cases where the jury are commanded to `look on him,' as in larceny and all accusations subjecting him to any species of mutilation or loss of limb, the same rule applies without exception. In all trials for inferior misdemeanors, however, a privy verdict may be given, and there is no occasion for the presence of the defendant." Chitty, Crim. Law, vol. 4, p. 37 (1819). "To speak it here, once for all, if any person be indicted of treason, or of felony or larceny, and plead not guilty, and thereupon a jury is retorned, and sworn, their verdict must be heard, and they cannot be discharged, neither can the jurors in those cases give a privy verdict, but ought to give the verdict openly in court." Co. Inst. p. 110; Co. Litt. 227b; 2 Hale, 300; Rex v. Ladsingham, T. Raym. 193, 83 Eng. Rep. R., 101. "A privy verdict cannot be given in a case of felony because the jury are directed and ought in such case to look upon the prisoner when they give their verdict." *452 5 Bac. Abr. (5th ed.), 283. "Only they cannot, in a criminal case which touches life or member, give a privy verdict." Sharswood, Black. Com., vol. 2, p. 360 (1873).
The opinions of Mr. Justice Depue, in Jackson v. State, 49 N.J.L. 252 (Sup. Ct. 1887), affirmed 50 N.J.L. 175 (E. & A. 1887), and Mr. Justice Reed, in State v. Peacock, 50 N.J.L. 34 (Sup. Ct. 1887), reversed on another ground 50 N.J.L. 653 (E. & A. 1888), attest the survival in this State of the common law limitation, (indeed, its contraction to embrace capital offenses only), prior to September 15, 1948, the effective date of Rule 2:10-2 which broadened the requirement to cover all offenses unless the defendant's absence in cases of non-capital offenses is voluntary after the trial has been commenced in his presence.
In an earlier case, State v. Vansciver, 7 N.J.L.J. 268 (1884), where, as here, the accused was absent in custody when the verdict was returned, it was intimated that the true test was not whether the crime charged be misdemeanor or felony, but rather whether imprisonment could be passed as part of the punishment. It was held, however, that the absence of the accused tried upon an indictment for mere misdemeanor was a mere trial error which might be waived. It is not supposed that, as in capital cases at common law, the verdict was absolutely void. Incest is a statutory crime (Act of 18th of March, 1796 (Pat. 208), R.S. 2:139-1 and 2:139-2), which was not at common law an indictable offense although punished by the ecclesiastical courts of England as an offense against good morals. 16 Am. & Eng. Enc. Law (2d ed.). 135; 27 Am. Jur., Incest, p. 287; cf. Wharton Crim. Law (12th ed.), vol. II, p. 2420. As such the return of the verdict in Graham's absence did not, under the common law test, render his conviction void. Unless the failure to have him present infringed upon some constitutional right the Mercer General Sessions did not lose jurisdiction, but he was at best the victim of a trial error remediable, not by habeas corpus, but by timely appeal in the nature of a writ of error. See In re Tremper, 129 N.J. Eq. 274 (E. & A. 1941); Com. *453 ex rel. Aldrich v. Ashe, 149 Pa. Super. 25, 26 A.2d 211 (Pa. Super. Ct. 1942).
So far as the diligence of counsel can discover or our own research reveals, it has not been suggested in the cases that the requirement that the accused should be present in person has been written into the Constitution of this State even as to offenses as to which at common law his presence was indispensable to a valid verdict. Where it has been held outside this jurisdiction that the absence of the defendant upon the rendition of the verdict was such a basic and fundamental error as to require discharge of the accused on habeas corpus, even though the error was not raised by timely appeal, the determination has been rested, not upon a constitutional provision, but upon the ground that as to the class of offenses where the right was recognized at common law "it is fundamental in Anglo-Saxon jurisprudence that the defendant * * * shall be permitted to be present * * *." Com. ex rel. Milewski v. Ashe, 363 Pa. 596, 70 A.2d 625 (Sup. Ct. Pa. 1950). But compare discussion in Orfield, Crim. Procedure (1947), at pp. 413-417.
Article I, paragraph 8 of the 1844 Constitution (Article I, paragraph 10, Constitution of 1947) provides that "In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel in his defense." Graham's counsel argues that a privy verdict in the case of every offense violates the guarantee of a "public trial." Not so. The provision, like similar provisions in the Federal Constitution and in the constitutions of the several states, was purposed to protect the accused from the abuses of the secret or star chamber trial "so that the public may see that he is fairly dealt with, and not unjustly condemned, and that the presence of spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *454 14 Am. Jur., Criminal Law, p. 865. That requirement was met in this case by keeping the court open to receive the verdicts.
And while, when testimony is presented or the jury is instructed, the accused has the right to be present because he is entitled under the Constitution to confront the witnesses against him and to make his defense upon the merits with the assistance of counsel, cf. State v. Nardella, 108 N.J.L. 148 (E. & A. 1931); State v. Auld, 2 N.J. 426 (1949), such reasons for his presence do not obtain after the jury has concluded its deliberations, and those constitutional provisions cannot be construed as requiring his presence when the verdict is reported.
Since the verdict was not upon an indictment for a crime as to which Graham's presence was essential upon common law principles and no constitutional protection of any right to be present can be found, we conclude that the order of the Law Division must be reversed. We are not to be understood as expressing any view of the effect to be given Rule 2:10-2 upon verdicts returned in like circumstances subsequent to its effective date.
Reversed.