4 A.3d 531

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. FRANK G. DELLISANTI, DEFENDANT–APPELLANT.

Argued January 20, 2010—Decided September 20, 2010.

*Daniel J. Brown,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Catherine A. Foddai,* Senior Assistant Prosecutor, argued the cause for respondent (*John L. Molinelli,* Bergen County Prosecutor, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

Defendant Frank Dellisanti was not in the courtroom when, during the jury's deliberations, the trial court responded to two questions posed by the jury and when the jury returned its verdict. The record provided limited insight into what had transpired leading up to defendant's absence during those final events of his trial. Unfortunately, that led the Appellate Division and

this Court, initially, to perceive that defendant's absence from the courtroom during the concluding events of the trial was due to circumstances brought about by the execution of an unrelated warrant for his arrest issued in another county. Indeed, defendant affirmatively argued, on appeal before the Appellate Division, and before this Court, that inaccurate version of events as the cause of his absence and, inexplicably, the State failed to correct it.

Only after our initial opinion was issued was the truth revealed through a written communication from the retired trial court judge, whose correction of the misperception was confirmed through a stipulation by counsel. We therefore readdress this appeal with the now accurate understanding that defendant's absence was not due to the reason that he has argued; rather, his absence was due to a medical problem that resulted in his removal to a local hospital for attention. Defendant's counsel acquiesced to the trial court's brief explanation to the jury to that effect. No further relief was requested during trial, and no motion for a new trial was made by defendant. Nevertheless, defendant raised on appeal a deprivation of his right to be present at his trial. Under these circumstances we conclude that, although *Rule* 3:16(b) has codified each defendant's significant right to be present throughout his or her criminal trial, in this matter defendant effectively waived that right.

I.

It is unnecessary to the issues on appeal to recount in detail the circumstances that led to the three charges on which defendant was tried in Bergen County. Suffice it to say that, following a disagreement and alleged physical altercation between defendant and a firefighter who was responding to a fire, defendant produced for law enforcement officers a motor vehicle insurance card that appeared to be fake. Defendant was charged with the fourth-degree offense of knowingly exhibiting or displaying to a law enforcement officer a falsely made, forged, altered, counterfeited

or simulated motor vehicle insurance identification card, *N.J.S.A.* 2C:21–2.3(b) (count one); the fourth-degree offense of uttering a writing or record knowing that it contains a false statement or information, with the purpose to deceive or injure anyone or to conceal any wrongdoing, *N.J.S.A.* 2C:21–4(a) (count two); and third-degree aggravated assault for purposely, knowingly, or recklessly causing bodily injury to a firefighter, *N.J.S.A.* 2C:12–1 (b)(5)(b) (count three).

Defendant's trial commenced on October 30, 2007, and continued through November 1, 2007, when the jury began deliberations. While the jury deliberated, an exchange occurred among the court, counsel, and defendant concerning the arrival of Morris County sheriff's officers to arrest defendant on a violation of probation. We recite the exchange, and the ensuing discussions with the jury, in full.

The Court: [Defense counsel] can I have your attention?

[Defense Counsel]: Yes.

The Court: I've been informed that they want [defendant] for violation of probation. It's a good warrant. *They will come and pick him up when we are done with this, with our case.* Bail wouldn't change. He has $50,000. No matter what happens I'm not going to remand him to jail.

[Defense Counsel]: He's got to be remanded on our case, right?

The Court: No. Not on our case. It's a third degree. He has $50,000 bail. *But he's going to be put in custody now until Morris County wants him and picks him up.*

[Defendant]: Violation of probation?

The Court: Yes.

Court Officer: Failure to appear on SLAP.

[Defendant]: My case was on appeal. I understand that. My case is on appeal from Morris.

The Court: All I know.

Court Officer: Appeal denied. Letter sent.

[Defendant]: That's not true. Whatever.

The Court: They'll pick you up.

[Defendant]: I'm telling you.

The Court: All right.

[ (Emphasis added).]

The court recessed for lunch, and jury deliberations continued at 1:30 p.m. Defendant was not present in the courtroom for the remainder of the trial. The record resumes with the court addressing with counsel two questions posed by the jury:

The Court: I will mark this as C–2. You all have a copy. "When was the aggravated assault charge made"? I guess it was made by the Grand Jury. The Grand Jury returned its indictment, it was made.

[Defense Counsel]: Okay.

The Court: "Is there an EMT report"? Yes. But it wasn't marked into evidence. Don't tell me there was an ambulance report. *Your client is not here. I will tell them he got a medical problem. The Court excused him so he could take care of it. Any objection to that?*

[Defense Counsel]: *No.*

The Court: *He's not feeling well. He had medical problems. The Court excused him to take care of it.*

[Defense Counsel]: Right.

The Court: Okay. Let's bring the jury out.

(Jury enters courtroom at 1:44 p.m.)

The Court: All right. You want to call the roll and make sure everybody is here. Would you stipulate that everybody is present?

[Defense Counsel]: Yes.

[Prosecutor]: Yes.

The Court: The first item. *[Defendant] is not here. He wasn't feeling well. He asked to be excused to seek medical attention. That's why he's not here.* Now, the first, we have I[sic] marked C–2. Your question. "When was the aggravated assault charge made"? Actually that was made by the Grand Jury. When they heard the case they returned an Indictment with that charge in it. There was no complaint signed prior to the Grand Jury action. And question, the second part. "Is there an EMT report"? There was a Lodi ambulance report. No one moved it into evidence. So, you don't get it. Rely upon your collective recollection, what the testimony was. Go, and go over it, and resolve it that way. The report was not marked by anyone. Therefore, you don't receive it. That takes care of your questions. I'm sorry for the delay. It takes time to gather things together when it comes from different places. Thank you. All twelve of you have to agree to stay beyond five. If you have something important, don't stay. If you stay beyond five let us know so we can tell the staff and they can make their arrangements.

(Jury and alternates leave courtroom at this time.)

The Court: Any objection?

[Defense Counsel]: No.

[Prosecutor]: Nothing.

(Jury deliberates.)

(Jury and alternates enter the courtroom at 2:08 p.m.)

The Court: She'll call the roll. Respond here when your name is called.

(Alternates are present at this time also.)

The Court: Everybody have those papers. All right. Now, you want to stand up. Has the jury reached a verdict?

The Foreperson: Yes.

[ (Emphasis added).]

The jury found defendant guilty of the two fourth-degree charges concerning the insurance card, but acquitted him of aggravated assault. At defense counsel's request, the jurors were polled. At sentencing, the court merged the two convictions and sentenced defendant to ninety days in the Bergen County jail as a condition of serving one year of probation. The court also ordered fines, fees and applicable penalties.

Defendant appealed, citing various trial errors, one of which brought this matter to us on an appeal of right. *See R.* 2:2–1(a). Asserting a violation of his constitutional right to be present at trial, defendant argued that the court erred in continuing the trial in his absence after he was taken into custody on a warrant for a violation of probation. In a split decision, the Appellate Division affirmed defendant's convictions.

The majority opinion found it "readily apparent that defendant's absence caused him no prejudice." The questions posed by the jury to the court during deliberations concerned the aggravated assault charge, of which he was acquitted. The majority said that the jury's questions were "straightforward, did not involve any arcane or sophisticated legal principle, or involve a disputed fact issue" and concluded that, therefore, defendant's presence would have brought no consequential benefit to his defense. It conceded that "it would have been beneficial if the record contained an explanation of the necessity to remove defendant from the court-room at the start of deliberations rather than following the return of the jury verdict." That said, because the record did not disclose any objection by defense counsel, the majority evaluated defendant's absence under a harmless-error standard and conclud-ed that "[w]here as here, defendant has not identified any harm

occasioned by his absence, and we can discern no harm, the error is harmless and does not require a new trial."

Plainly, the majority viewed execution of the warrant as the reason for defendant's absence. So did the dissenting judge, who pointed to *Rule* 3:16(b) and described "[t]he *nonconsensual removal* of defendant from the courtroom before the completion of his trial [as] an error of constitutional dimension," to which a structural-error analysis applied. Under such an analysis, the dissent explained, it is irrelevant whether overwhelming evidence exists against the accused. Thus, the dissent concluded that "defendant's removal from the courtroom prior to the completion of his trial caused a rift in the structure that produced the judgment which can only be repaired by a new trial." Moreover, even if a harmless-error analysis were applicable, the dissent disagreed with the majority's conclusion. The dissent commented that "it cannot be said beyond a reasonable doubt that the jury's sense of responsibility remained undiminished once told that defendant had left because he 'wasn't feeling well,' " and, further, that defendant was deprived of the psychological influence that he could have exerted over the jury by being present.[1]

---

[1] From the scant discussion in the transcript of any other reason for defendant's absence than the court's pre-lunch-recess reference to the execution of a warrant for defendant's arrest, the dissent, and apparently the majority members of the panel, were not presented with any facts to support a basis for the "not feeling well" explanation for defendant's absence. Indeed, defendant argued affirmatively that execution of the warrant caused his absence. In his brief before the Appellate Division, defendant stated that "[i]mmediately after the jury retired to begin deliberations, [defendant] was removed from the courtroom and taken into custody on a warrant for a violation of probation in Morris County." The disconnect between the ostensible reason for defendant's absence and the explanation given to the jury troubled the dissent, which commented that defendant was potentially harmed by the "concocted reasons" and "lame excuse" given to explain defendant's absence from the concluding events of his trial. Inexplicably, that factual inaccuracy was not corrected before the Appellate Division. Worse yet, despite the fact that that misperception figured prominently in the dissent, which caused this matter to become an appeal as of right to this Court, no party to this appeal moved before the Appellate Division

Because of the dissent in the Appellate Division, the issue came before us as of right. *R.* 2:2–1(a). We also granted defendant's petition for certification, which raised the same issue and one other: whether the Appellate Division was mistaken to have found no reversible error in the trial court's allowance of prosecutorial questioning of defendant that compelled him to comment on the credibility of the State's witnesses. 200 *N.J.* 504, 983 *A.*2d 1112 (2009).

## II.

### A.

The right to be present at trial is protected by the Sixth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, and by Article I, paragraph 10 of the New Jersey Constitution. *See United States v. Gagnon,* 470 *U.S.* 522, 526, 105 *S.Ct.* 1482, 1484, 84 *L.Ed.*2d 486, 490 (1985); *Hudson, supra,* 119 *N.J.* at 171–72, 574 *A.*2d 434 (reviewing constitutional and earlier common law roots of right to presence). In some circumstances that do not involve the confronting of witnesses or evidence against a defendant, the right is protected by the due process clauses of the Fifth and Fourteenth Amendments. *Gagnon, supra,* 470 *U.S.* at 526, 105 *S.Ct.* at 1484, 84 *L.Ed.*2d at 490; *Hudson, supra,* 119 *N.J.* at 171, 574 *A.*2d 434. In combination, those constitutional protections provide a defendant with the right to be present at every stage of trial "whenever . . . presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts,* 291 *U.S.* 97, 105–06, 54 *S.Ct.* 330, 332, 78 *L.Ed.* 674, 678 (1934); *see State v. Auld,* 2 *N.J.* 426, 433–35, 67 *A.*2d 175 (1949) (following Snyder's approach to claimed due process deprivation of right to presence).

---

for reconsideration to correct the record. Nor, as noted, was the error corrected in the briefs or argument before this Court.

In *Hudson, supra*, Justice Stein, writing for our Court, traced the essential nature of the defendant's personal right to confront the witnesses against him and to assist in the presentation of his defense during the trial's proceedings, and explained that it also serves larger due process considerations, including protection of the public's interest in the provision of fair and just criminal proceedings. 119 *N.J.* at 171, 574 *A.*2d 434 (citations omitted). Thus, the right operates on two planes; presence at trial

> affords a defendant the ability to communicate with counsel during trial, assist in presentation of a defense, and in the process of cross-examination. It includes the independent right of a defendant to represent himself or herself at all stages of a criminal proceeding, if he or she elects to do so. Institutionally, the defendant's right to be present at trial ensures public confidence in the courts as instruments of justice.
>
> [*Id.* at 172, 574 *A.*2d 434 (citations omitted).]

The right is so vital to the proper and fair functioning of the criminal justice system that it is protected by a specific rule. New Jersey's *Rule* 3:16(b) provides in pertinent part:

> The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.

The Rule's affirmative protection of the right to presence has been embedded in both our criminal practice rules and in the federal rules of criminal procedure since their respective inceptions. *See R.* 2:10–2 (1949) (current version at *R.* 3:16); *see also Fed.R.Crim.P.* 43 (1946). Ever since the modern New Jersey court rules first were adopted following passage of the 1947 Constitution,[2] a variant of present *Rule* 3:16(b) has existed, al-

---

2 *See N.J. Const. Art.* 6, § 2, ¶ 3 ("The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts.").

though its history precedes even the development of formal rules of criminal practice.

The first set of court rules under the 1947 Constitution, the result of a cooperative effort overseen by the justices of the first New Jersey Supreme Court, were drafted by a team drawn from the members of the bar and aided by suggestions and commentary from judges and lawyers throughout the State. George S. Harris, *Foreword, Rutgers L.Rev.* (Special Number) iii (1948). As rules of procedure were proposed, revised, and finalized, the drafters acknowledged that they drew inspiration from existing law and custom, including the newly adopted federal rules governing criminal practice.[3] *See* Duane E. Minard, Jr., *The Rules of Criminal Practice in the Superior Court and County Courts, Rutgers L.Rev.* (Special Number) 138 (1948) ("[T]hese rules are marked less by innovation than by their recognizable restatement of law and practice as it previously existed in New Jersey. This, plus the fact that they are patterned after the Rules of Criminal Practice in the Federal Courts, practically robs them of any novelty.").

Like the United States Supreme Court's criminal practice rules, New Jersey's newly formed criminal practice rules highlighted a defendant's right to presence throughout the trial proceedings against him, taking pains to detail the parts to which the right attached. The initial rule, *Rule* 2:10-2,[4] provided:

The defendant shall be present at the arraignment, at the pretrial conference if any, at every stage of the trial including the impaneling of the jury and the return

---

[3] Only a few years earlier, the United States Supreme Court instituted rules for use in criminal proceedings in the federal courts. *See* 18 *U.S.C.A.* § 687 (1946). A provision specifically addressing a defendant's right to presence at trial appeared at federal *Rule* 43, which provided, in pertinent part, that: "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules." *Fed. R.Crim.P.* 43 (1946).

[4] As noted *infra*, our court rules were subsequently renumbered, and the rule governing "Presence of the Defendant" was relocated to *Rule* 3:5-4, before again being moved to its present location at *Rule* 3:16.

of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by death the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict.

[*R.* 2:10–2 (1948) (current version at *R.* 3:16).] [5]

Notwithstanding adjustments made to the rule along the way, what has not changed has been the existence of a robust right for a defendant to be present "at every stage of the trial[,] including the impaneling of the jury and the return of the verdict, and at the imposition of sentence ...." *R.* 2:10–2 (1948); *and R.* 3:16(b) (2010) (with comma after "trial").

### B.

In the more than sixty years since the adoption of the criminal practice rules and their inclusion of an express protection of a defendant's right to presence at trial, this Court has been called upon, on numerous occasions, to determine whether a defendant's right to presence under the court rule has been violated and, if so, what remedy should flow from the violation. Many of our cases have explored the circumstances under which a trial in absentia is permissible,[6] *see, e.g., State v. Grenci,* 197 *N.J.* 604, 619–21, 964

---

[5] Since 1948, New Jersey's formulation of the rule guaranteeing the right to be present has undergone numerous revisions, including adjustments as part of larger reorganization and renumbering of the court rules. *See, e.g., R.* 3:5–4 (1953) (renumbering rule and deleting explicit reference to presence at pretrial proceedings); *R.* 3:16–2(b)(2) (1993) (implementing *Hudson, supra,* 119 *N.J.* at 182, 574 *A.*2d 434, equating voluntary absence before trial with voluntary absence after trial commenced for purposes of rule); *R.* 3:16(a) (1996) (adding explicit protection of right to presence at "every scheduled [pretrial] event").

[6] *Rule* 3:16(b) does not proscribe trials in absentia; indeed, a categorical rule invalidating all such trials has been recognized as counter-productive to criminal justice concerns in that it would allow defendants too great an ability to disrupt court proceedings simply by absenting themselves whenever they wished. *See Hudson, supra,* 119 *N.J.* at 183, 574 *A.*2d 434. *Rule* 3:16(b) addresses that concern by providing that a defendant may waive his or her right to be present either by offering "express written or oral waiver on the record," or by knowingly and voluntarily failing to appear at trial after receiving actual notice of its start date or after being present for its commencement.

A.2d 776 (2009); *State v. Luna,* 193 *N.J.* 202, 936 *A.2d* 957 (2007); *State v. Whaley,* 168 *N.J.* 94, 103–05, 773 *A.2d* 61 (2001); *Hudson, supra,* 119 *N.J.* 165, 574 *A.2d* 434. Others have evaluated the significance of a defendant's absence during a particular portion of the proceedings. *See Hudson, supra,* 119 *N.J.* at 176, 574 *A.2d* 434 (collecting examples of cases in which defendant's absence was determined not to constitute reversible error). The latter category of cases is the more relevant to the present matter.

The earliest case to assess a defendant's absence from a portion of his trial proceedings following adoption of the court rules was handed down the same year that the rules took effect. *See Auld, supra,* 2 *N.J.* 426, 67 *A.2d* 175. The Court was asked to consider whether the new rule protecting presence had "the force and effect of law, and assume[d] the status of a constitutional provision." *Id.* at 434, 67 *A.2d* 175. Our predecessors concluded that the rule was "procedural" and examined the defendant's claimed violation to his right to presence under due process considerations and under the rule. *Ibid.*

In *Auld,* the defendant alleged two violations of his right to presence at every stage of trial, neither of which implicated confrontation interests: first, that he was not in the courtroom when the judge responded, in writing, to a written jury request for clarification of the potential verdicts; and second, that he was excluded from the courtroom when motions on questions of law were argued by counsel. *Id.* at 431–34, 67 *A.2d* 175. Conceding that "[u]nfortunate, inexcusable and irregular incidents amounting to bad procedural practice occurred during the course of the trial of the case," the Court nevertheless rejected defendant's due process arguments that sought the reversal of his conviction. *Id.* at 431–33, 67 *A.2d* 175. In doing so the Court relied, in part, on *Snyder, supra,* 291 *U.S.* 97, 54 *S.Ct.* 330, 78 *L.Ed.* 674,[7] for the

---

[7] In *Snyder,* a defendant challenged his exclusion from a jury's visit to a crime scene, permissible under Massachusetts law, arguing that his Fourteenth Amendment due process rights had been infringed by his forced absence from the

propositions that due process requires only that a defendant be able to contribute to his defense and that a violation of defendant's due process right to presence must be assessed from the perspective of whether a fair and just hearing was thwarted by defendant's absence. *See Auld, supra,* 2 *N.J.* at 434, 67 *A.*2d 175. With respect to defendant's right to be present to contribute to his defense, our Court held that "the sole test is whether such irregularities prejudice the defendant in maintaining his defense on the merits." *Id.* at 434–35, 67 *A.*2d 175.[8] In the absence of a showing of such prejudice in the case before it, the Court declined to reverse defendant's conviction. *Id.* at 439–40, 67 *A.*2d 175. The Court found that the lack of prejudice to defendant was fatal to his claim of a due process deprivation and to his claim that the violation of the express provision of *Rule* 2:10–2, guaranteeing him a right to be present at "every stage of the trial," entitled him to a reversal of his conviction. *Id.* at 434–35, 67 *A.*2d 175.

■ Since *Auld,* claims of error where a defendant was absent from a stage of trial are examined for prejudice. Specifically our decisions have examined whether the absence was prejudicial to the defendant's right to participate in the evidential proceedings and confront the witnesses and evidence against him or to his

---

viewing. *Id.* at 103–05, 54 *S.Ct.* at 331–32, 78 *L.Ed.* at 676–77. To Snyder's claim that he was deprived of an opportunity to contribute to his defense, the Supreme Court stated that there was no "privilege of presence when presence would be useless, or the benefit but a shadow." *Id.* at 106–07, 54 *S.Ct.* at 332, 78 *L.Ed.* at 678. Explaining that a defendant must demonstrate a "reasonable possibility that injustice has been done" in order to successfully challenge his involuntary absence from a part of the proceedings on due process grounds, the *Snyder* Court found it had not "even a passing thought that the presence of Snyder would have been an aid to his defense". *Id.* at 113, 54 *S.Ct.* at 335, 78 *L.Ed.* at 682. Thus, because defendant was unable to suggest how the crime scene viewing would have varied in his presence, the Court found no intimation of injustice to defendant and affirmed the conviction. *See ibid.*

[8] In so holding, the Court also relied on then-extant *Rule* 1:2–19(b), "which provide[d that] 'No judgment given upon any indictment shall be reversed ... [f]or any error except such as shall have prejudiced the defendant in maintaining his defense upon the merits.' " *Id.* at 434, 67 *A.*2d 175.

ability to assist with his own defense. *See, e.g., State v. Byrd,* 198 *N.J.* 319, 353–57, 967 *A.*2d 285 (2009); *State v. Colbert,* 190 *N.J.* 14, 21–24, 918 *A.*2d 14 (2007); *State v. W.A.,* 184 *N.J.* 45, 64–67, 875 *A.*2d 882 (2005); *State v. Morton,* 155 *N.J.* 383, 444–45, 715 *A.*2d 228 (1998). The case law reflects our sensitivity to the prejudicial effect of the violation to the individual's interests to be protected by the right to presence as well as the potential for harm to the judiciary's institutional interest in the public demonstration of the fairness of criminal proceedings. In that regard, the cases do not demonstrate a per se approach. When the absence deprives a defendant of confrontation rights, prejudice can be readily assessed; when confrontational interests are not in play and participation in one's defense is the issue, prejudice is more critically examined. *Compare Byrd, supra,* 198 *N.J.* at 353–57, 967 *A.*2d 285 (affirming reversal of conviction on constitutional and procedural grounds where trial court made credibility determinations following in camera evidentiary hearing with witness from which defendant and his counsel were excluded), *and W.A., supra,* 184 *N.J.* at 64–67, 875 *A.*2d 882 (remanding for new trial where defendant was excluded from sidebar conferences during voir dire and denied meaningful ability to challenge potentially unsympathetic juror), *with Colbert, supra,* 190 *N.J.* at 23–24, 918 *A.*2d 14 (reinstating conviction where satisfactory lawyer-shuttle system was used to communicate details of sidebar conferences with defendant who was present in courtroom, but not physically at sidebar), *and Morton, supra,* 155 *N.J.* at 444–45, 715 *A.*2d 228 (1998) (finding no reversible error where defendant was absent from pretrial motions limited to questions of law).

Thus, we turn to address the factual circumstances of defendant's absence in light of the important policies embodied in Rule 3:16.

### III.

■ This case presents a matter of first impression factually. No decision of our Court has confronted a fact pattern as unique,

in so many ways, as this is. The facts, as we now understand them, present a defendant who complained of chest pains during a lunch recess and was transported to a local hospital for evaluation, and who made no demand for delay of his trial due to absence either when counsel conferred with the court on the record immediately post-recess, or in any post-trial motion. Also, it is of no little import that our present understanding of the factual circumstances to defendant's absence is entirely different from that which defendant argued to the Appellate Division, and to us, and on which we based our earlier, now withdrawn, opinion in this matter. Against that unique and disquieting backdrop, we begin with the reminder of *Rule* 3:16(b)'s basic promise to provide each criminal defendant with the right to be present through the return of the verdict and the polling of the jury. *See Graham, supra,* 13 *N.J.Super.* at 451–53, 80 *A.*2d 641 (describing common law approach to right to presence). The Rule's requirements can be waived, however, and, in this matter, we perceive acquiescence by defendant to his absence from the ending events of his trial.

Defendant now concedes the factual inaccuracy of his initial appellate claim that the execution of an arrest warrant caused him involuntarily to miss the concluding events of his trial. A joint stipulation to that effect was submitted by counsel. Rather, a medical complaint precipitated defendant's absence from the courtroom. His failure to request a delay of the trial, either immediately through counsel, or to raise the issue of an "involuntary" absence in a post-trial motion, undermines any legitimacy to defendant's belated and, as originally presented, factually false, appellate claim of a violation to his right to presence. Instead, we perceive defendant's failure to object or to move post-trial for a new trial based on his courtroom absence as evidencing an acquiescence to not being present for the jury's return of the verdict. Furthermore, under the circumstances here, we will not presume prejudice to defendant because the jury was told that an undisclosed medical need caused him not to be present when the jury returned to the courtroom to have its simple factual questions answered by the court and also when it returned its verdict. To

the extent that the dissent below, as well as we, previously, worried that the jury might ascribe negative connotations to a "concocted reason[ ]" for defendant's absence, that worry has evaporated. The astringent sting of truth eliminates any concern for such fanciful possibilities.

This case exemplifies the need for an on-the-record exploration of the reason for a defendant's mid-trial absence and for a fulsome explanation of the trial court's basis for ruling out an involuntary reason for the defendant's lack of presence. In the circumstances presented here, as they have been uncovered, counsel's agreement to the trial court's procedure and to the court's explanation to the jury sufficed to demonstrate to the trial court, and now to us, that at the time defendant was acquiescing to his absence from the closing events of his trial. Defendant's failure to advance any post-trial motion in that regard provides further evidence in support of that conclusion.

■ Finally, as the Appellate Division below so found, we hold that defendant has demonstrated no prejudice from his lack of participation in the court's response to the brief, simple factual questions posed by the jury. And, we further discern no per se, or otherwise demonstrable, prejudice to defendant from his apparent acquiescence to his absence from the return of the jury's verdict. Therefore, we reject defendant's argument that he is entitled to reversal of his conviction based on an asserted violation of his right to presence under *Rule* 3:16.

## IV.

■ For completeness, we note that in addition to the appeal as of right concerning the construction of *Rule* 3:16(b), we granted defendant's petition for certification, which also alleged trial court error in allowing certain questions posed by the prosecutor when cross-examining defendant. 200 *N.J.* 504, 983 *A.*2d 1112 (2009). During trial, defendant testified on his own behalf. Not surprisingly, his version of events differed dramatically from the version presented by the State through the testimony of two police

officers and a firefighter. In an apparent attempt to portray defendant's defensive testimony as suggestive of a conspiracy among the State's witnesses to "get him," on cross-examination, the prosecutor pursued the following line with defendant:

It's your testimony [that the firefighter] is making all this up to get back at you?

....

So, if we accept your version of events, [the firefighter] is either lying or completely mistaken about who hit him ..., correct?

....

So, [the firefighter] is either mistaken or lying about what he testified to? Regarding getting hit by your truck, right?

....

And also if we accept your version of the events, [the police lieutenant] was outright lying, you never said anything to him about ... the insurance certificate?

....

[The police lieutenant] is also lying?

....

In your investigation of the events [the police lieutenant] is simply not telling the truth ... ?

....

[The police sergeant and lieutenant] is [sic] lying?

....

[The lieutenant] is lying, [the sergeant] is lying, [the firefighter] is lying, correct?

Defendant contends that, through this line of questioning, he was forced to assess the credibility of the witnesses against him. The State counters that the prosecutor's questions were directed at defendant's claims of a conspiracy against him and, nevertheless, were harmless if erroneous. The Appellate Division found that the line of questions was improper, but concluded that defendant was not denied a fair trial as a result of that questioning because he was acquitted of the aggravated assault charge, and because the trial court provided proper instructions to the jury regarding its duties concerning credibility determinations.

"[C]redibility is an issue which is peculiarly within the jury's ken and with respect to which ordinarily jurors require no expert assistance." *State v. Frisby,* 174 *N.J.* 583, 595, 811 *A.*2d 414 (2002) (internal quotation marks and citation omitted). Like

the facts presented in *Frisby,* the State's case against defendant involved a "pitched credibility battle" between defendant and the police officers and firefighters. *See id.* at 596, 811 *A.*2d 414. The prosecutor's line of questioning did compel defendant to comment starkly on the credibility of the witnesses against him and such questioning should have been avoided. There were other ways in which the State could have made its point without asking the defendant repeatedly to comment on whether another testifying witness or witnesses are lying. We do not find, however, that this error deprived defendant of a fair trial. The trial court provided a full and appropriate instruction to the jury on how to address credibility. Moreover, the fact that defendant was acquitted on the aggravated assault charge adds to our conclusion that this claim of error does not entitle defendant to reversal and a new trial.

## V.

The judgment of the Appellate Division, upholding defendant's convictions, is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.