**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2980-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TERRI M. GROSS,

     Defendant-Appellant.

_____

Submitted September 15, 2021 – Decided September 23, 2021

Before Judges Messano, Rose and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 13-09-0524.

Christian A. Pemberton, attorney for appellant.

Kristin J. Telsey, Acting Salem County Prosecutor, attorney for respondent (David M. Galemba, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In December 2014, a jury found defendant Terri M. Gross guilty of unlawfully releasing confidential records of the New Jersey Division of Youth and Family Services (DYFS),[1] a fourth-degree crime pursuant to N.J.S.A. 9:6-8.10b, and the disorderly persons offense of obstructing the administration of law, N.J.S.A. 2C:29-1. State v. Gross, No. A-3010-14 (App. Div. Sept. 15, 2017) (slip op. at 9). On appeal, we reversed defendant's conviction for the Title Nine offense and remanded for a new trial; we also reversed her conviction for obstruction. Id. at 29.[2]

At the retrial, although present for jury selection, opening statements, and the first day of testimony, thereafter defendant failed to appear. The jury convicted defendant in absentia of violating N.J.S.A. 9:6-8.10b. Several weeks later, defendant moved for a new trial, arguing her absence was due to emergent psychiatric treatment she received that made it impossible for her to attend trial. The judge denied the motion.

Defendant moved for reconsideration, supplying the judge with additional information regarding her absence from trial. The judge agreed to hold a plenary

[1] DYFS since became the Division of Child Protection and Permanency.

[2] The Court denied the State's petition for certification. State v. Gross, 234 N.J. 124 (2018).

A-2980-19

hearing and did so over the course of two days.  Thereafter, she denied the motion for reconsideration and sentenced defendant to a probationary term of one year, with credit for any probationary time already served.[3]

Defendant now appeals, arguing the following:

I.  THE TRIAL COURT ERRED OR ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR NEW TRIAL.

II.  THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR RECONSIDERATION HAVING FOUND THAT HER HOSPITALIZATION WAS INVOLUNTARY WHILE THE RECORD REFLECTS THAT SHE WAS CLEARLY UNABLE TO CONTACT HER ATTORNEY OR THE COURT TO DISCLOSE HER WHEREABOUTS.

We have considered these arguments in light of the record and applicable legal standards.  We affirm.

## I.

Given the issues raised on appeal, we need not review the State's evidence at trial in detail.  It suffices to say that defendant worked as a secretary in the Detective Unit of the Salem City Police Department, and her duties included

---

[3]  We do not have a transcript of the sentencing.  The judgment of conviction indicates that in addition to the probationary term, the judge ordered "[d]efendant to forfeit public office."

A-2980-19

filing DYFS records substantiating abuse or neglect referrals, which, although supplied to the police chief, remain confidential by statute. See N.J.S.A. 9:6-8.10a(e). In her statement to police, defendant admitted providing the city's mayor with a confidential report of substantiated abuse by one of the mayor's primary challengers after the mayor told defendant that everyone in the police department worked for him and demanded she give him a copy of the report. The report was subsequently widely distributed throughout town.[4]

Jury selection for defendant's retrial before Judge Linda Lawhun occurred on August 14, 2019. Defendant was present, as she was for the start of trial on Thursday, August 15, when four of the State's five witnesses testified. Because the State's final witness lived in South Carolina and would not arrive until Tuesday, August 20, the judge excused the jury until then.

When trial recommenced on the morning of August 20, defendant was not present, and defense counsel did not know where she was or why she was absent, and his attempts to contact defendant by phone were unsuccessful. He requested

---

[4] On appeal, we vacated the conviction of defendant's co-defendant, Isaac A. Young, the director of the city's housing authority, concluding the Title Nine offense applied only to unlawful disclosures by those persons and entities authorized by statute to receive the confidential records. State v. Young, 448 N.J. Super. 206, 218–22 (App. Div. 2017), aff'd o.b., 233 N.J. 345 (2018).

A-2980-19

Judge Lawhun delay trial for another hour. The prosecutor joined in that request, noting that defendant was routinely present for all court appearances. With the parties' consent, the judge excused the jury until the afternoon. Later that morning, defendant was still absent and defense counsel had no news of her whereabouts. Prior to breaking for lunch, Judge Lawhun provided counsel with a copy of the model jury instruction regarding a defendant's absence and asked counsel to consider what the judge should tell the jury. See Model Jury Charges (Criminal), "Defendant's Absence from Trial," (rev. June 14, 2004).

After lunch, defense counsel confirmed that neither his office nor one of defendant's potential character witnesses had heard from her. The judge was inclined to proceed since there was no explanation for defendant's absence, Hudson warnings were given to defendant,[5] and the State's final witness had arrived from out-of-state. Counsel indicated defendant intended to testify and asked that trial be continued to the next day. Judge Lawhun found that permitting the State's final witness to testify would minimize prejudice to the State, and with input from defense counsel, the judge settled on the instructions

---

[5] See State v. Hudson, 119 N.J. 165, 182 (1990) ("[T]rial courts [should] inform a criminal defendant at the arraignment of the right to be present at trial and the consequences of the failure to appear.").

A-2980-19

she gave the jury regarding defendant's absence. The State called its last witness, after which the court held a charge conference with the attorneys.

On the following day, August 21, defendant was again absent. Defense counsel had left messages for defendant several times the previous night and in the morning but received no response. He also was unable to reach any of defendant's character witnesses. When trial resumed, three stipulations were read to the jury, and defendant rested without presenting any witnesses. After summations, and without objection from defense counsel, Judge Lawhun included instructions on defendant's absence in her final jury charge. The jury commenced deliberations in the morning but did not reach a verdict.

On August 22, 2019, defense counsel indicated that he still had not located defendant. The jury resumed its deliberations and returned a guilty verdict shortly thereafter. After discharging the jury, the judge discussed defendant's continued absence with defense counsel. He had requested Salem police officers check defendant's house, but no one was home. One officer found a possible address for defendant in Delaware online, and defense counsel was "following up." Concerned about the time limits for bringing a motion for a new trial, defense counsel stated for the record that he wished to preserve his right to seek relief "if it turns out that we found [defendant] and . . . she was completely

6

indisposed and [had] no way to get in touch with us."[6]  Citing the "unusual circumstances," given defendant's faithful appearance at all prior court events, Judge Lawhun told defense counsel:

> Certainly[,] if you find out that for some reason [defendant] was not able to contact you or not able to have somebody else contact you, whatever that reason may be, in the interest of justice I would have to consider your application, were you to file one for whatever reason you're seeking, whether it's to reopen the trial or otherwise.  So[,] you have preserved that for purposes of the record.

On September 30, 2019, defendant filed a motion for a new trial.  Counsel certified that defendant understood on August 15 she was to return to court on August 20 for continuation of trial.  On or about August 29, 2019, police in

---

[6]  Defense counsel's concern was unfounded, since Rule 3:20-2 provides:

> A motion for new trial based on the ground of newly-discovered evidence may be made at any time, but if an appeal is pending, the court may grant the motion only on remand of the case.  A motion for a new trial based on a claim that the defendant did not waive his or her appearance for trial shall be made prior to sentencing.  A motion for a new trial based on any other ground shall be made within [ten] days after the verdict or finding of guilty, or within such further time as the court fixes during the [ten]-day period.
>
> [(Emphasis added).]

Delaware advised counsel that defendant had been an inpatient at the Wilmington Veterans Affairs (VA) Medical Center from August 16 to August 28, 2019. Counsel said that when defendant first contacted him, on or about September 25, 2019, he learned that she was unable to receive his calls during her hospitalization because she did not have her phone.

In further support of the motion, defendant submitted a letter dated October 2, 2019, from Michelle Washington, Ph.D., a psychologist at the VA hospital, confirming that defendant was hospitalized from August 16 to August 28 because of an exacerbation of symptoms related to post-traumatic stress disorder and major depression. A second letter from Dr. Washington, dated October 24, 2019, stated that when defendant presented at the VA hospital, she was "crying uncontrollably," expressing "suicidal ideation," "under tremendous stress," and "not able to be on trial as emergency hospitalization was determined to be warranted."

During oral argument on the motion on November 15, 2019, defendant advised her attorney for the first time that the VA hospital had faxed a letter to the court advising of her status. Judge Lawhun responded that the court had not received any fax, which would have been brought to her attention, since at the time, "everyone was looking" for defendant. The judge found that while

A-2980-19

defendant had provided an explanation for her absence, she had failed to show that she was unable, either herself or through others, to let her attorney or the court know where she was. Specifically, there was no evidence that defendant was incapacitated or unable to communicate her absence. Accordingly, Judge Lawhun determined that defendant's absence from trial was knowing and voluntary, and she entered an order denying the motion.

Within days, defendant moved for reconsideration and requested a plenary hearing based on "[n]ew information . . . regarding appropriate attempts to inform the court of [d]efendant's involuntary unavailability." Counsel certified that after filing the new trial motion, he obtained documentation demonstrating the VA hospital faxed notice of defendant's hospitalization to the court on August 16, 2019. Defendant included a letter, signed by Melissa Foster, Program Director for General Mental Health/Recovery, dated August 16, 2019, addressed "To Whom It May Concern," which contained no address or fax number. The letter stated that defendant was "not able to appear in court on Tuesday, August 20, 2019, due [to] need for a medical hospitalization." Ms. Foster no longer had documented confirmation of the faxed transmission, but she certified that the letter was faxed to the court on August 16, 2019, and she had received confirmation. Also, in support of the motion, defendant supplied

progress notes signed by Ms. Foster on August 16 stating: "Writer will provide [defendant] with a letter to fax to the courts to excuse her from attending . . . and will have her sign a release of information to send it to her attorney." Counsel, however, certified that he never received anything from the VA hospital.

Defense counsel wrote to the judge requesting an order compelling the testimony of Ms. Foster and Dr. Washington, as required by the VA's Office of General Counsel. At the January 10, 2020 hearing on defendant's reconsideration motion, defense counsel renewed the request, but Judge Lawhun subsequently wrote counsel concluding she lacked legal authority to compel the witnesses' testimony. The judge executed an order directing that defense counsel have all witnesses present in court on February 7, 2020. By letter dated February 4, 2020, VA General Counsel denied defense counsel's request for testimony from Ms. Foster, Dr. Washington, and a VA record custodian. Prior to the second day of the plenary hearing, defendant submitted twenty-eight additional pages of records obtained from the VA hospital.

Defendant testified at the plenary hearing on January 10 and again on February 7, 2020. She had been meeting with Dr. Washington at the VA hospital weekly over the previous two years. She knew when she left court on Thursday,

August 15, 2019, that she was required to appear next on Tuesday, August 20, and she did not appear because she was hospitalized.

Defendant explained that around 2:00 p.m. on Friday, August 16, 2019, she drove alone to the VA hospital in Wilmington because she was "in distress." Although she had her cell phone with her, defendant did not contact family, friends, or her attorney – for whom she had two numbers programmed into her phone – before checking herself into the hospital. Defendant said she failed to contact her attorney because she did not expect to become an inpatient and was "in a crisis."

When she arrived at the hospital, defendant recalled getting on an elevator to see Dr. Washington, but around 5:00 p.m., she found herself in the emergency room. The hospital took her keys, and, as defendant understood it, a group of individuals, including Dr. Washington and Ms. Foster, determined she should be involuntarily hospitalized. Defendant never asked how long she would remain in the hospital. Defendant testified that she relied on the hospital officials to notify the court.

Later in the evening of August 16, the Delaware State Police transported defendant in handcuffs to a second facility. She explained that she never asked someone to call her attorney "because of the letter . . . from Ms. Foster . . . and

11

[she] was advised from the VA, that that was already taken care of." On Sunday, August 18, defendant was transported to a third facility. Still, she did not think to have someone call her attorney that day, or any of the remaining ten days of her hospital stay, because she believed Ms. Foster had faxed a letter to the court.

Defendant explained that although VA staff retrieved her cell phone from her car, she did not call the court at that point "[b]ecause the attending technician said that due to VA policy, [she] was not allowed to have a cell phone." Her personal items, including her cell phone, were taken and put in her property bag, and she did not have a landline phone in her room.

A family friend picked up defendant from the hospital when she was discharged on August 28, and drove her back to their house. Defendant did not contact defense counsel upon release because she "still wasn't in [her] right frame of mind." Defendant also claimed that on release, the letter allegedly sent to the court was not in the bag containing her personal items. She asked for a copy when she saw Dr. Washington nearly two weeks later, and, although the doctor said she would get in touch with Ms. Foster and get another copy, defendant never received one.

Contrary to defense counsel's certification, defendant testified she first contacted her attorney around September 1, 2019, when she accessed counsel's

12

voicemail messages. According to defendant, when she finally spoke to counsel, he told her that he had received two letters from the VA hospital, but they did not discuss the contents of the letters. Defendant "assumed" counsel had the letter the VA hospital sent to the court and, until the November 15 argument on the new trial motion, she never specifically asked if he had the letter.

In an oral decision that followed defendant's testimony, Judge Lawhun denied the motion for reconsideration, finding that although defendant was involuntarily hospitalized, her "only effort to let the [c]ourt or her attorney know . . . was to tell [Ms.] Foster and [Dr.] Washington that she had a court date." The judge found no evidence as to what fax number the VA hospital staff actually used, questioned how the hospital staff could know what number to use, and determined there was insufficient evidence "to establish that [Ms.] Foster ever faxed a letter to this [c]ourt." The judge further found that defendant did not contact her attorney upon being released on August 28, 2019, and never spoke to him about the alleged faxed letter until the hearing in November.

The judge reviewed defendant's progress notes provided by the VA hospital. Ms. Foster wrote that she would "provide [defendant] with a letter to fax to the courts to excuse her from attending on Tuesday and will have her sign a Release of Information to send it to her attorney." Judge Lawhun concluded

A-2980-19

this was inconsistent with Ms. Foster's subsequent certification in which she claimed to have faxed the letter herself. The August 16 notes also indicated that defendant was "medically stable for transfer," "behaviorally stable," and her status was changed to "voluntary" on August 18. The psychiatric assessment noted that defendant was "oriented to place, person and thing," and discussed her "legal issues."

Judge Lawhun found that defendant knew she had to return to court on August 20 and had "some ability to either ask to contact her lawyer or the [c]ourt herself," or, "at a minimum, to be consistent and persistent with making sure that somebody at that hospital or facility had taken care of notification both to the [c]ourt and her attorney." The judge found that defendant's preoccupation with and stress over her legal proceedings, which triggered her hospitalization, was "in direct contradiction" with her "nonchalance" about making sure the court and her attorney were notified. In sum, Judge Lawhun found defendant failed to establish that she did not have the ability or means to inform her attorney or the court, directly or indirectly, of the reason for her absence.

## II.

"The trial judge . . . may grant . . . a new trial if required in the interest of justice." R. 3:20-1. Our courts have recognized the constitutional "guarantee

[of] the right of the accused to be present in the courtroom at every stage of the trial." State v. Luna, 193 N.J. 202, 209 (2007) (citing Illinois v. Allen, 397 U.S. 337, 338 (1970)). However, that "right . . . is not absolute." Id. at 210. Although our Rules therefore require that a "defendant shall be present at every stage of the trial, . . . [n]othing . . . shall prevent a defendant from waiving the right to be present . . . ." R. 3:16(b).

> A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.
>
> [Ibid.]

"[W]here there is no express waiver, the touchstone is whether a defendant's conduct reveals a knowing, voluntary, and unjustified absence." Luna, 193 N.J. at 210. See also State v. Finklea, 147 N.J. 211, 213 (1996) ("[O]nce a defendant has been given actual notice of a scheduled trial date, nonappearance on the scheduled or adjourned trial date is deemed a waiver of the right to be present during the trial absent a showing of justification by the defendant.").

A-2980-19

As noted, a motion for a new trial premised "on a claim that . . . defendant did not waive his or her appearance for trial shall be made prior to sentencing." R. 3:20-2.

> At a hearing on the motion, a defendant has the burden to show why the defendant's voluntary absence at the trial after receiving actual notice of the trial date, time, and place, does not constitute a knowing and voluntary waiver of the right to be present. The State does not have the burden of proving that a defendant's absence is unjustified. To the contrary, <u>a defendant has the burden of proving the absence was justified</u>.
>
> [<u>Finklea</u>, 147 N.J. at 220 (emphasis added).]

Initially, we agree with the State that the argument defendant makes in her first point is moot. Although Judge Lawhun ultimately denied the reconsideration motion, she granted defendant's request to conduct a plenary hearing, after which she considered both the additional documentary evidence and defendant's testimony. Indeed, the judge noted in her decision following the plenary hearing that it was "as if the [m]otion [for a new trial] were being heard all over again." Our review of the November 15, 2019 order, therefore, must be seen through the lens of what followed, and particularly the specific findings the judge made after considering the additional evidence produced by defendant. <u>See, e.g.</u>, <u>In re City of Plainfield's Park-Madison Site</u>, 372 N.J. Super. 544, 550 (App. Div. 2004) ("Issues that have been rendered moot by

16

subsequent developments render legal issues abstract and outside the proper realm of courts." (citing Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996))).

In her second point, defendant contends that Judge Lawhun, having correctly found defendant was involuntarily hospitalized on August 16, 2019, erred by concluding defendant's absence from trial was knowing, voluntary and unjustified because she failed to communicate with the court or counsel. Defendant asserts Judge Lawhun's conclusion was "contrary to the facts of this case." We disagree.

"Although we accept the trial court's findings of fact that are 'supported by sufficient credible evidence in the record,' we need not defer to the trial court's legal conclusions reached from the established facts." State v. Taylor, 440 N.J. Super. 515, 521 (App. Div. 2015) (quoting State v. Gamble, 218 N.J. 412, 424 (2014), then citing State v. Jefferson, 413 N.J. Super. 344, 352 (App. Div. 2010)). Nor do we defer to the judge's ruling if made "under a misconception of the applicable law." Ibid. (quoting Jefferson, 413 N.J. Super. at 352).

The Court has had "numerous occasions, to determine whether a defendant's right to presence under the court rule has been violated and, if so,

17

what remedy should flow from the violation." State v. Dellisanti, 203 N.J. 444, 456 (2010) (collecting cases). No reported decision, however, has considered the exact facts presented here.

Luna presents the most similar facts.[7] There, the defendant failed to appear on the scheduled or adjourned trial date. 193 N.J. at 207. The court started trial without the defendant and continued it the next day when the prosecutor advised that the defendant was incarcerated in New York. Ibid. Defense counsel sought an adjournment and an opportunity to have the defendant brought to New Jersey so the judge could conduct an "inquiry and question [the defendant] before continuing the trial." Ibid. The judge refused, and the defendant was tried and convicted in absentia. Id. at 208.

The Court cited with approval our decision in State v. Givens, where we said:

> While incarceration is an obvious and powerful fact to be considered giving rise to a factual presumption against voluntary waiver, it should not foreclose the hearing judge from further inquiry as to the reason notification was not made, whether

---

[7] In Dellisanti, the defendant was transported to the hospital during a luncheon recess due to a medical problem. 203 N.J. at 460. Although presenting similar factual circumstances, i.e., defendant's hospitalization during trial, Dellisanti provides limited guidance because the Court concluded that the defendant acquiesced to the trial proceeding without him since his attorney never objected and never made a post-trial motion for a new trial. Ibid.

> reasonable efforts for notification were possible, what, if any, action was taken by or on behalf of the defendant, and whether the defendant understood or was capable of understanding that he or she had a duty of notification.
>
> [353 N.J. Super. 280, 289 (App. Div. 2002).]

The Court did not "equate a defendant's incarceration with involuntariness in all situations." Luna, 193 N.J. at 214. Instead, the Court held that when "the fact of [a defendant's] incarceration . . . first come[s] to light after trial," the judge may consider a motion for a new trial pursuant to Rule 3:20-2. Ibid. "At a hearing, defendants bear the burden of showing that their failure to attend trial was due to their incarceration and that they did not have the ability or means to advise their attorney or the court, directly or indirectly, of their plight." Id. at 214–15 (emphasis added) (citing Finklea, 147 N.J. at 220).

In Luna, because the defendant made an unsuccessful motion for adjournment, and the judge made the findings required by Rule 3:16(b) without a hearing and without "allow[ing] defense counsel the opportunity to explore" the facts surrounding the defendant's incarceration, the Court reversed, concluding "the subsequent proceedings [were] defective." Id. at 215.

Here, Judge Lawhun accorded defendant an opportunity to explain her absence from trial, as well as the efforts she made to contact her attorney and

the court. The judge found defendant's initial hospitalization was involuntary. Although the judge noted defendant's continued hospitalization was voluntary after two days, she assumed arguendo that defendant remained in the hospital for medical reasons.[8] Nonetheless, the judge's findings regarding defendant's lack of effort to notify anyone, including her attorney, of her whereabouts are amply supported by the record. So, too, are the judge's conclusions regarding the fax allegedly sent by the VA hospital staff. Moreover, the judge concluded, and we agree, that defendant's lax attitude toward notification was inconsistent with the fact that her hospitalization was allegedly caused by anxiety about the trial.

The Court in <u>Luna</u> made clear that, like a defendant incarcerated in another jurisdiction, defendant in this case had the burden of demonstrating that she "<u>did not have the ability or means to advise [her] attorney or the court,</u>

---

[8] We need not address, therefore, defendant's reliance on Delaware law, which she claims converted her involuntary commitment status to voluntary commitment status because the facility was unable to continue her involuntary commitment for more than forty-eight hours, despite her need for continued treatment. It does not appear the argument was presented to Judge Lawhun and is raised for the first time in defendant's reply brief. <u>See</u> <u>Pannucci v. Edgewood Park Senior Hous. — Phase 1, LLC</u>, 465 N.J. Super. 403, 409–10 (App. Div. 2020) (citing <u>State v. Smith</u>, 55 N.J. 476, 488 (1970) (noting impropriety of raising [an] argument for first time in [a] reply brief)). In any event, the judge assumed defendant was required to remain in the hospital.

directly or indirectly, of [her] plight."  Id. at 214–15 (emphasis added) (citing

Finklea, 147 N.J. at 220).  Judge Lawhun heard the testimony of defendant,

considered the documentary evidence presented, and concluded that defendant

failed to shoulder that burden.  We defer to the judge's factual findings and agree

with her legal conclusions based on the evidence produced at the hearing.

    Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2980-19