STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN WILLIAM SMITH, DEFENDANT-APPELLANT.

Argued December 15 and 16, 1969—Decided March 16, 1970.

*Mr. Harris David* and *Mr. Raymond Brown* argued the cause for appellant (*Mr. Oliver Lofton,* attorney; *Mr. Edward Carl Broege, Jr.,* of counsel).

*Mr. M. Richard Altman,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* County Prosecutor of Essex County, attorney).

PER CURIAM: The Essex County Grand Jury returned indictments which charged the defendant John William Smith with having committed assaults and batteries on police officers John De Simone and Vito M. Pontrelli. His motion to dismiss the indictments was denied (*State v. Smith,* 102 *N. J. Super.* 325, 246 *A.* 2d 35 (Law Div. 1968)) and, after trial, the jury failed to agree on the Pontrelli matter but found the defendant guilty of having committed an assault and battery on Officer De Simone. The defendant appealed to the Appellate Division and we certified before argument there.

The officers testified that while they were traveling west in a police car along 15th Avenue, the defendant driving a taxicab behind them went into the eastbound lane and passed them at the intersection of 15th Avenue and South Seventh Street. They followed the cab and brought it to a stop on 15th Avenue between Ninth and Tenth Streets. When they asked the defendant for his license and registration he became abusive and was placed under arrest. Officer De Simone ordered him out of the cab but the defendant first held on to the door and then suddenly opened it, striking it against the officer's chest. The defendant jumped from the cab, cursing and swinging and then struck Officer De Simone in the mouth with his fist. Officer Pontrelli came to De Simone's assistance and, after a struggle, the defendant was subdued and forced into the rear of the police car. The foregoing version of the incident was supported by the testimony of both officers. In addition Officer Citarella, who came quickly to the scene on a police radio call, testi-

fied that he saw De Simone bleeding from his lip and De Simone said that he "got whacked," he "got hit." The trial judge told the witness not to tell what he was told. But *cf. State v. Simmons*, 52 *N. J.* 538, 541–42 (1968). Dr. Kredenser testified that he treated Officer De Simone for a superficial laceration of the lower lip, applied merthiolate, put on some gentian violet and "gave him tetanus toxoid, too."

The defendant denied that he struck either of the officers. He testified that when he passed the police car it was double parked and thereafter, when he was signaled by the police car to stop, he pulled into a vacant space along the curb. He was asked for and produced his driver's license and registration and one of the officers said "you popped the intersection" which the defendant took to mean that "he was playing games." The defendant replied that the police car was double parked but the officers said that it was "in motion." At that point the defendant said "go ahead and do what you want to do" because he figured he "would get a ticket and go back to work." The officers then told him that he was under arrest and he got into the police car. The defendant denied that he cursed or struck either officer but testified that while he was in the police car being driven to the precinct headquarters and later at the headquarters he was beaten by the officers. The officers denied this and, in view of the indictments and the trial issue, the jury was called upon to determine only whether the State had established beyond reasonable doubt that the defendant, when he emerged from the cab, had assaulted the police officers, as they flatly asserted and he flatly denied. The jury credited the officers' testimony that the defendant had struck Officer De Simone and its finding of guilt is not attacked before us as being against the weight of the evidence. *R. R.* 1:5–1 (now *R.* 2:10–1) ; *State v. Williams*, 39 *N. J.* 471, 490, *cert. denied*, 374 *U. S.* 855, 83 *S. Ct.* 1924, 10 *L. Ed.* 2d 1075 (1963), 382 *U. S.* 964, 85 *S. Ct.* 449, 15 *L. Ed.* 2d 366 (1965).

■ In support of his appeal, the defendant's brief advances nine points of alleged error which will be dealt with in the order of their presentation. The first asserts that "[t]he substantial underrepresentation of four identifiable classes of citizens, to wit, Negroes, women, persons of low incomes, and residents of Newark" on the grand and petit jury lists violated the defendant's constitutional rights and rendered his indictment and conviction invalid. This point was dealt with adequately by Judge Giuliano in the Law Division; we agree essentially with his opinion (102 *N. J. Super.* at 344–57) and find no sufficient showing of any constitutional infirmities in the pertinent Essex County grand and petit jury lists. *Cf. State v. Rochester,* 54 *N. J.* 85 (1969) where we affirmed Judge Botter's rejection of a somewhat comparable attack on the Bergen County jury lists and noted specifically the recent steps which have been taken towards truly random selection throughout our entire State not only of petit jurors but of grand jurors as well. 54 *N. J.* at 91–92.

■ In his second point the defendant contends that the "widespread and adverse publicity that surrounded the proceedings below" denied to him a fair and impartial "grand jury hearing and trial." The disorders and lawlessness which took place in Newark in the summer of 1967 were said by some to have been triggered by the defendant's arrest. There was extensive publicity but this was largely in July 1967 and the defendant's trial did not begin until the latter part of March 1968. When the jury was being selected for the defendant's trial, court and counsel took great pains to make certain that those selected would be fair and impartial jurors, who had little or no recollection of any pertinent earlier publicity, and who would be in sound position to decide the case on the evidence and the legal instructions presented during the trial. The *voir dire* was substantially unrestricted, it consumed much time, and careful examination of it supports the conclusion that a fair and impartial jury was actually obtained. *See State v.*

*Ravenell,* 43 *N. J.* 171, 181 (1964), *cert. denied,* 379 *U. S.* 982, 85 *S. Ct.* 690, 13 *L. Ed.* 2d 572 (1965). We find nothing in the record to indicate that the defendant's right to a fair trial was prejudiced by the earlier publicity; nor do we find anything to indicate that the publicity prejudiced the defendant insofar as the grand jury proceedings were concerned. The grand jury would have no reason for not returning indictments in view of the testimony of the police officers and there is nothing whatever before us to suggest that the indictments were returned on any improper basis or in any improper manner. *See* 102 *N. J. Super.* at 339–44; *cf. State v. Borg,* 9 *N. J. Misc.* 59 (Sup. Ct. 1931).

The defendant's third point attacks the constitutionality of the statutory oaths required of grand and petit jurors. *N. J. S.* 2A:73–3; *N. J. S.* 2A:69–1.1. The Law Division expressly held, *inter alia,* that the oath requirements were constitutional. 102 *N. J. Super.* at 335–37. Construed and applied narrowly (*cf. Application of Walter Marvin, Jr.,* 53 *N. J.* 147, *cert. denied,* 396 *U. S.* 821, 90 S. Ct. 62, 24 *L. Ed.* 2d 72 (1969)), they should readily withstand constitutional attack. *See* 102 *N. J. Super.* at 336–37; *Konigsberg v. State Bar of California,* 366 *U. S.* 36, 49–52, 81 *S. Ct.* 997, 6 *L. Ed.* 2d 105, 116–17 (1961); *American Communications Assoc. v. Douds,* 339 *U. S.* 382, 412–13, 70 *S. Ct.* 674, 94 *L. Ed.* 925, 951–52 (1950). However, we need not pursue the issue here for we are satisfied that the defendant was not, in any event, harmed by the oath requirements. He was not a member of any group which might be excluded because of the oaths (102 *N. J. Super.* at 333) and, more importantly, there was no suggestion that any prospective grand or petit jurors had actually declined to take the oaths or had been excluded because of them. The circumstances make it evident that the "probability of prejudice," referred to in the defendant's brief, was entirely absent; indeed the danger of prejudice was so remote as to be viewed as nonexistent.

In his fourth point, the defendant asserts that the trial court improperly refused to allow his counsel to make challenges for cause out of the hearing of prospective jurors. The first time counsel asked to make a challenge for cause at the bench he was permitted to do so and the challenge was sustained. The second time the court told him to make his challenge in open court and it was also sustained; it may be that the court, knowing its probable ruling in this particular instance, thought time would be saved that way. Later counsel made challenges for cause without requesting permission to come to the bench. When at one point counsel said that he felt compelled to exercise peremptory challenges because the court had instructed him "that challenges for cause could not be heard at side bar," the trial judge said "I did not say that." Later when counsel asked, he was again permitted to come to the bench for the purpose of making a challenge for cause. All in all it may not fairly be said that the trial court had made any general ruling prohibiting challenges for cause at side bar. The subject matter was clearly one within the trial court's discretion and there is nothing to indicate any improper exercise of that discretion or any prejudice to the defendant.

We find no merit in the defendant's fifth point which asserts that the prosecutor's use of peremptory challenges to exclude Negroes (the defendant was a Negro) from the petit jury violated his constitutional rights. The prosecutor and defense counsel each had ten peremptory challenges to use generally as they pleased. *R.* 1:8–3(d). They were not called upon to express any reasons and both of them exercised their peremptory challenges freely and without any indications whatever as to their reasons. *See Swain v. Alabama,* 380 *U. S.* 202, 220, 85 *S. Ct.* 824, 836, 13 *L. Ed.* 2d 759, 772 (1965): "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." The defendant sets forth, as a fact, that only three Negroes were called on the *voir dire* and that the pros-

ecutor exercised peremptory challenges with respect to all three. But that fact without more does not establish any practice of systematic exclusion of Negroes, nor does it establish, as the defendant contends, that the three prospective jurors were excused "solely because of their race"; indeed our examination of the *voir dire* suggests that in at least one of the three instances there was an obvious affirmative reason, wholly unrelated to race, for the prosecutor's exercise of his peremptory challenge. *See Swain v. Alabama, supra,* where the Court, in rejecting a constitutional attack on the prosecutor's exclusion of Negroes from a particular jury through the use of peremptories, said:

> In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. 380 *U. S.* at 222, 85 *S. Ct.* at 837, 13 *L. Ed.* 2d at 773–774.

The defendant's sixth point urges that witnesses for the State had breached the trial court's sequestration order and that a mistrial should have been declared for that reason. On defense counsel's motion the trial court had directed that the witnesses be sequestered. *Cf. State v. Di Modica,* 40 *N. J.* 404, 413 (1963). Prospective witnesses were kept out of the courtroom but defense counsel did not call the court's attention to the desirability of directing each witness not to discuss his testimony with other prospective witnesses until they had testified and apparently the trial court gave no such specific direction. *See State v. Williams,* 29 *N. J.* 27, 46 (1959). After Officer De Simone testified, he met Officer Pontrelli during luncheon. When

later Pontrelli was called by the State to testify, defense counsel knew that he had talked with De Simone but raised no objection before the trial court. Instead, during cross-examination, he asked Pontrelli whether he had spoken with De Simone and Pontrelli said he had but that De Simone had merely related some of the questions asked of him without relating his answers. On the following day, at the conclusion of another witness' testimony, defense counsel made a belated motion for mistrial. It was untimely and, in any event, the trial court properly exercised its discretion in denying it. *See State v. Williams, supra,* where the Court noted that violation of a sequestration order "without fault on the part of the State, would not constitute error; at least it is difficult to conceive of a case in which it would." 29 *N. J.* at 46–47. *See also State v. Michalis,* 99 *N. J. L.* 31, 34 (Sup. Ct. 1923). Here there was no fault on the part of the State and no showing of prejudice. We are satisfied that the defendant's sixth point lacks substance and presents no ground for reversal.

The defendant's seventh point attacks an evidential ruling during Deputy Chief Melchior's testimony as an abuse of the trial court's discretion. Several witnesses for the State had testified that Officer De Simone had a laceration of the lip whereas several defense witnesses said they saw no evidence of such injury. The defense called De Simone as its witness and he testified that the defendant's blow struck him in the mouth; that the blow struck his lower lip breaking the skin on the inside; and that the break in the skin was not visible from the outside although there was externally visible swelling or puffiness. After De Simone completed his testimony the defense called Melchior who testified that when he saw De Simone at precinct headquarters De Simone had a small cut and swelling on the lower lip. He further testified that the cut was on the outside and was visible to him. Defense counsel then sought to inquire about earlier testimony in a separate proceeding where Melchior allegedly said that De Simone's injury was

to the upper lip rather than, as he stated on the witness stand, to the lower lip. At that point, the trial court asked defense counsel whether he was seeking to impeach his own witness and counsel replied that he had called Melchior "as a hostile witness in this matter." When the court expressed the view that the witness was not hostile, counsel proceeded to inquire about the earlier testimony but an objection to the inquiry was sustained.

In the defendant's brief, counsel acknowledges that his stated justification for seeking to impeach Melchior's testimony was not legally sound but he now urges that he should have been permitted to proceed under New Jersey's rule relating to "neutralization." *See Evidence Rule* 20; *State v. Gallicchio,* 44 *N. J.* 540, 546 (1965); *State v. Baechlor,* 52 *N. J. Super.* 378, 389 (App. Div. 1958). In *Gallicchio* the Court pointed out that where a party calls a witness who surprises by testifying contrary to a prior statement, to the harm of the proponent's case, the proponent may be permitted to use the prior statement for the purpose of neutralizing or cancelling out the witness' surprising testimony on the stand. *Evidence Rule* 20 specifies that "the party calling a witness may not neutralize his testimony by a prior contradictory statement unless the judge finds he was surprised." And *Gallicchio* noted that "the proponent cannot claim harm if the present testimony is only contrary to that which the proponent expected or was attempting to elicit or that the witness failed to render the expected assistance" and that to constitute harm "the witness must give testimony asserting the existence or nonexistence of a material fact contrary to the proponent's case." 44 *N. J.* at 546.

It seems clear that the defendant suffered no harm within the principles set forth in *Gallicchio* or indeed in any realistic sense. Melchior's testimony varied from that of De Simone and, in his summation to the jury, defense counsel made the most of the variation. Thus he pointed to De Simone's testimony that his laceration was not externally

visible and to Melchior's conflicting testimony, and he referred to this as "one of the basic inconsistencies" in the State's case which, he urged to the jury, did not measure up to the required standard of proof beyond a reasonable doubt. If Melchior's testimony had been neutralized, counsel could hardly have made any effective use of it in his summation. In any event, the entire matter of Melchior's testimony appears to us to be minor and nonprejudicial in the light of the full record; we are satisfied that if the prior statement had been admitted for neutralization purposes it would not have had any material effect on the jury's verdict and that its exclusion clearly did not constitute an abuse of the trial court's discretion calling for reversal of the defendant's conviction.

The eighth point asserts that the trial court erred in permitting the introduction of evidence relating to prior traffic offenses. The State's evidence indicated that when the defendant's car was stopped and he was asked to produce his driver's license and automobile registration he failed to do so but came out cursing and swinging. The defendant denied this and said that he immediately produced his license and registration and offered no resistance. In attacking his version, the State, on cross-examination, brought out evidence indicating a motive and an explanation of his behavior, namely, his driver's license had been revoked and therefore it may fairly be inferred that he was concerned about an offense much more serious than the manner of his driving along 15th Avenue and one which would endanger his continued operation as a cab driver.

The defendant contends that the evidence of his being on the revoked list as a result of his previous "accumulation of twelve points," was inadmissible under *Evidence Rule* 55 which states that "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion * * *." However

the same rule contains an explicit exception which states that "such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident." *See State v. Kociolek,* 23 *N. J.* 400, 418–20 (1957); *State v. Harris,* 105 *N. J. Super.* 319, 322–23 (App. Div. 1969). The evidence was admissible within this exception and, in the context of the entire record, we find neither error nor prejudice in the manner in which the trial court dealt with it.

The ninth and final point in the defendant's brief urges that the judgment of conviction be reversed "because of the accumulation of errors committed below" (*State v. Orecchio,* 16 *N. J.* 125, 129 (1954)); this point must of course fall in the light of our disposition of the defendant's earlier points. In a reply brief purportedly responding to the State's answering brief, the defendant enlarged on his main argument and attacked an additional evidential ruling of minor nature. Such use of a reply brief is improper, and, in any event, nothing was presented of any substantial merit or of sufficient significance to warrant discussion here. As we have already indicated, the trial was a full and fair one and was free from error prejudicially affecting the defendant's legal rights. The issue was a factual one with little complexity and the jury decided it in favor of the State and against the defendant. We cannot say on the record before us that the jury's finding of guilt was either unjust or infirm and accordingly our clear appellate responsibility is to declare that the judgment of conviction below be and hereby is:

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.