NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2537-14T1

WILLIAM LEWIS, ROBERT LEWIS
and LEWIS ENTERPRISES,

    Plaintiffs-Respondents,

  v.

ROBERT HULL,

    Defendant-Appellant,

  and

POINT PLEASANT LANDCO, LLC,
SINGULARITY HOLDINGS, LLC, and
SURF LAUNDROMAT, LLC,

    Defendants.

_____

        Submitted February 7, 2017 — Decided March 2, 2017

        Before Judges Fisher, Ostrer and Leone.

        On appeal from the Superior Court of New
        Jersey, Law Division, Ocean County, Docket No.
        L-3759-11 and Monmouth County, Docket No. L-
        220-16.

        Law Offices of William M. Luers, LLC,
        attorneys for appellant (William M. Luers, on
        the brief).

Koster, Brady & Nagler, LLP, attorneys for respondents (Danielle M. Hughes, on the briefs).

PER CURIAM

This is the second of two suits between Robert Lewis, William Lewis and their business, Lewis Enterprises (collectively "Lewis"), on one hand, and Robert Hull and his business, Point Pleasant Landco, LLC (collectively "Hull"), on the other. This second suit was based on a settlement agreement reached in the first, by which Hull agreed to remediate contaminated property previously owned by Lewis and later by Hull, and to hold Lewis harmless for any further claims on or remediation of the property, in exchange for Lewis's payment of $290,000. When Hull later refused to remediate, Lewis undertook the task and commenced this suit, alleging, among other things, Hull's breach of the settlement agreement. Summary judgment was entered on Lewis's claim that Hull breached the settlement agreement and, in later proceedings, the judge summarily awarded Lewis $290,000 and attorneys' fees, as authorized by the settlement agreement. In appealing, Hull argues summary judgment was improvidently granted, claiming a question of fact regarding whether Lewis fraudulently induced the settlement agreement by failing to disclose in discovery he had insurance coverage for Hull's claims in the first suit. We affirm because, even assuming Lewis was deceptive during discovery, Hull

chose not to perform the settlement agreement and therefore had no right to retain the settlement funds paid by Lewis.

To put the issues in perspective, we start at the beginning. In 1947, Claude and Ida Asa purchased property on Richmond Avenue in Point Pleasant, where they operated a laundry service and dry cleaning business until selling the property to Lewis in 1969. Lewis continued operating a laundry service on part of the property and leased out the remaining portion,[1] until 1978 when Lewis operated a dry cleaning business as well as a suede and leather cleaning business on the premises; after a few years, the dry cleaning operation was discontinued, but Lewis continued to operate a suede and leather cleaning business until selling the property to Hull in 1993.

Hull operated a dry cleaning business on the premises. When Hull attempted to sell the property in 2002, the buyer's inspection revealed the presence of PCE contamination.[2] In response to notices and demands about the contamination, Lewis asserted it did not use

---

[1] Lewis also leased a portion of the property to New Jersey Natural Gas, which operated a customer service and appliance showroom there between 1969 and 1971.

[2] The parties use the acronyms PCE and TCE interchangeably while apparently referring to the same chemical formula, $C_2Cl_4$, which is known as both Perchloroethylene (PCE) and Tetrachloroethylene (TCE). Our resolution of the issues on appeal does not require that we delve further into the nature of the contamination or the world of chemistry.

or store PCE on the premises but instead used Valclene, a non-pollutant comprised of fluorinated-chlorinated hydrocarbons. Hull claimed he did not use TCE during his ownership of the property.

Consequently, Hull sued Lewis and others in Ocean County in 2004. On June 2, 2008, Hull and Lewis entered into a settlement agreement. Despite insistence that any contamination was caused by predecessors, Lewis agreed to pay Hull $290,000 for Hull's past, present and future remediation expenses and costs, and Hull agreed to complete the property's remediation, to hold Lewis harmless, and to indemnify Lewis for any past, present or future claims and costs of any kind related to the environmental contamination of the property. The agreement also contained the parties' stipulation that "[a]ny party which obtains judicial relief as a result of a material breach of the terms and conditions of [the settlement agreement] by any other party shall be entitled to recover its reasonable attorneys' fees and costs from the breaching party." The suit was dismissed with prejudice as required by the settlement agreement.

A few months after the settlement, the New Jersey Department of Environmental Protection (NJDEP) issued to Hull a notice of deficiency regarding the property. Hull did not respond, and, on May 19, 2010, the NJDEP issued a notice of deficiency not only to Hull but also Lewis. On June 1, 2010, Hull responded to the NJDEP

by advising he had no intention of remediating the property.[3] Lewis unsuccessfully sought to informally extricate himself from the thrust of the NJDEP's directive and began remediating the property.

In 2011, Lewis also filed this suit in Ocean County against Hull, seeking damages based on, among other theories, Hull's breach of the settlement agreement. Cross-motions for summary judgment were filed in 2014, and the trial judge concluded as a matter of law and undisputed fact that Hull breached the settlement agreement. On the scheduled trial date soon thereafter, the judge heard Lewis's oral application for final relief and agreed there were no triable issues; the judge found Lewis was entitled to $290,000 in damages, as well as attorneys' fees pursuant to the terms of the settlement agreement. Lewis also voluntarily dismissed his alleged causes of action against Hull. After Lewis's counsel fees were quantified in the amount of $45,570.01, judgment was entered on October 20, 2014, in favor of Lewis and against Hull, in the amount of $335,570.

The trial judge denied Hull's subsequent motion for reconsideration, and Hull filed a timely appeal, arguing in a single point that his summary judgment motion should not have been denied and that he should have been permitted to present a defense

---

[3] Hull transferred the property to an unrelated entity in 2010.

of fraud based on what he claims was Lewis's misrepresentations during discovery about insurance coverage.

While the appeal was pending, Hull moved in this court for supplementation of the record to include discovery obtained during the course of a legal malpractice action commenced by Hull against attorneys who represented him in the first suit; specifically, Hull sought to provide this court with information that suggested Lewis failed to disclose it possessed insurance coverage for the claims asserted by Hull in the first suit. He claimed that this factual assertion was relevant because he believed when he settled the first suit that Lewis was a "collection risk[]" if they had gone to trial in the first case and he obtained a large judgment. Hull claimed that, for this reason, he agreed to the $290,000 settlement even though that amount only constituted approximately nineteen percent of the fees and environmental engineering costs incurred. We denied without prejudice the motion to supplement the record on appeal and, instead, granted a limited remand so Hull could move in the trial court for relief from the judgment in light of the information in question. After a delay caused by a transfer of the matter from Ocean to Monmouth County, Hull filed his Rule 4:50 motion. By way of a comprehensive and thoughtful oral decision, Judge Jamie S. Perri denied relief.

We thereafter allowed Hull to file an amended notice of appeal as the means of seeking review of the denial of his Rule 4:50 motion, and the parties filed additional briefs. Hull argues in this portion of his appeal that:

> I. THE JUDGMENT SHOULD BE VACATED BECAUSE [LEWIS HAS] SUFFERED NO DAMAGES THAT CAN BE RECOVERED AT CONTRACT.
>
> > A. The Court Should Deny [Lewis] the Windfall Judgment Sought that Breaks with the National Consensus on the Collateral Source Rule.
> >
> > > 1. The National Consensus Disallows the Recovery [Lewis] Seek[s] under the Collateral Source Rule.
> > >
> > > 2. The Policies under-lying Contract Law Mili-tate Against the Recovery that [Lewis] Seek[s].
> > >
> > > 3. There are no Special Circumstances in this Case to Justify Applica-tion of the Collateral Source Rule.
> >
> > B. Under New Jersey Law, [Lewis] Should Not Obtain the Windfall Judgment [Sought].
>
> II. THE COURT SHOULD REMAND THE MATTER TO THE TRIAL COURT TO DETERMINE IF [LEWIS IS] IN MATERIAL BREACH OF THE SETTLEMENT AGREEMENT.

We consider, first, the issues raised in the parties' initial briefs, and then the issues arising from the Rule 4:50 determination required by our limited remand.

I

The standard applied when reviewing an order granting summary judgment is the same Brill[4] standard that governed the trial judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). We examine only those materials submitted in support of and opposition to the motion, and interpret the factual assertions in the light most favorable to the opponent. Brill, supra, 142 N.J. at 540.

In now arguing that summary judgment, which was based on his breach of the settlement agreement, was erroneously granted, Hull asserts he was misled about whether Lewis was covered by insurance during the legal proceedings leading up to the settlement. Hull, however, offered nothing in support at that time; indeed, it is not even clear from the record on appeal that Hull made that argument when opposing summary judgment. Instead, although in his initial brief here he asserts that summary judgment should not have been granted because he was misled about insurance coverage, he refers only to a certification filed in support of a later motion for reconsideration. The motion judge could not have erred

---

[4] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

in granting summary judgment by failing to consider factual allegations only asserted at a later date.[5]

In his reply brief, Hull asserted we should reverse the summary judgment because the judge did not provide a ruling that had sufficient specificity demanded by Rule 1:7-4(a). Because this argument was not raised in his initial brief, we need not now consider it. See State v. Smith, 55 N.J. 476, 488 (1970) (recognizing the impropriety of raising an argument for the first time in a reply brief). Moreover, despite the brevity of the judge's ruling, we find no merit in this contention. The judge found that Hull breached the settlement agreement because there was no dispute that Hull had not honored his part of the bargain. In fact, Hull clearly and indisputably refused to remediate the property despite the promise he made to Lewis when he received $290,000 from Lewis. The argument of counsel on the summary judgment motion's return date demonstrates this; at that time

---

[5] We would further note that Hull did not identify in his notice of appeal that he was seeking our review of the order denying reconsideration nor did he argue in his brief that the judge erred in denying reconsideration. Consequently, we do not review that order. See Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div.) (orders not designated in the notice of appeal are not subject to review), aff'd o.b., 138 N.J. 41 (1994); see also Almog v. Israel Travel Advisory Serv., Inc., 298 N.J. Super. 145, 155 (App. Div. 1997) (only arguments appearing under "appropriate point headings" are considered), appeal dismissed, 152 N.J. 361, cert. denied, 525 U.S. 817, 119 S. Ct. 55, 142 L. Ed. 2d 42 (1998).

Hull's attorney argued his client "certified and suggests that he was using passive remediation, which is a nice way of saying [he] will do nothing." In light of that unequivocal acknowledgement that Hull had not upheld and would not uphold his part of the bargain, we reject Hull's contention that summary judgment on the breach of contract theory was erroneous. That argument and any other arguments that might be discerned from Hull's pre-remand submissions are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

II

As noted earlier, Hull also appeals the denial of the Rule 4:50 motion, which we permitted to be filed and considered during the pendency of this appeal.

At the remand stage, Hull did a better job of providing evidence supportive of his claim that Lewis misled him prior to the settlement agreement about the existence of insurance coverage. But we find no abuse of the judge's discretion in denying relief. See Hodgson v. Applegate, 31 N.J. 29, 37 (1959) (recognizing that such a motion is "addressed to the sound discretion of the trial court, guided by equitable principles"); see also F.B. v. A.L.G., 176 N.J. 201, 207 (2003); ATFH Real Prop., LLC v. Winberry Realty P'ship, 417 N.J. Super. 518, 528 (App. Div.

2010), certif. denied, 208 N.J. 337 (2011). Although Judge Perri assumed Lewis was not entirely open about insurance coverage in pre-settlement discovery, she denied the motion for a number of reasons. Now, in appealing the denial of the Rule 4:50 motion, Hull does not seem to reprise his fraud argument but instead asserts that the return to Lewis of the $290,000 in settlement proceeds constitutes a windfall or is otherwise barred by his argument for an expansive application of the collateral source rule. We find Hull's arguments to be without sufficient merit to warrant further discussion, R. 2:11-3(e)(1)(E), adding only the following brief comments.

As we have observed, Judge Perri appropriately assumed Lewis was not sufficiently forthcoming in discovery about insurance coverage in the first suit. On this point, Hull relied on Lewis's response to an interrogatory seeking insurance information; without waiving his general objections, Lewis asserted that he had "been unsuccessful in locating any insurance policies pre-1986 with respect to the property or business operations conducted at the property and accordingly has not been able to assert any claims for potential coverage against any insurance carriers." That answer was certified by Lewis on September 27, 2004, prior to the settlement. Nothing obtained from discovery in the legal malpractice action demonstrated that this was a false statement

at the time it was made. To the contrary, the record created in the trial court following our remand suggests only that there was some litigation or communications, or both, between Lewis and insurance companies and that Lewis and certain insurers resolved their disputes about the existence of coverage by agreeing to fund the $290,000 settlement with Hull that shortly followed. But Lewis had an obligation to seasonally amend his discovery responses. Rule 4:17-7. And although there is little in the record to suggest that Hull was particularly interested in the status of Lewis's attempts to secure coverage prior to reaching a settlement for $290,000, we agree with Judge Perri that it was fair to assume, for purposes of the Rule 4:50 motion, that Lewis was not "forthcoming" about his attempts to obtain insurance to cover Hull's claims against him. Accordingly, even though Hull presented little but his conclusory assertions about his state of mind when settling the first case, we will assume for present purposes that Lewis concealed relevant information about insurance coverage prior to the settlement of the first suit.[6]

---

[6] Hull has also referred to the answers to interrogatories given by Lewis in this second suit. In response to Hull's interrogatory about insurance coverage, Lewis informed Hull that he (Lewis) was the "plaintiff[] in this matter and as such, there will be no judgment entered against [him] in relation to this lawsuit." Even if we were to assume in spite of the logic of Lewis's response, that it was misleading, we fail to see how this 2013 statement

Judge Perri, however, correctly recognized that this assumption was irrelevant. That is, Judge Perri determined that even if Hull had been misled when settling the first case, he presented no legal or equitable reason to support his efforts to retain the $290,000 settlement proceeds. Stated another way, the final order in the second suit called only for the return to Lewis of the $290,000 settlement proceeds and no other aspect of the agreement is relevant here.[7] And Hull's arguments in support of his <u>Rule</u> 4:50 motion both in the trial court and here, relate solely to the propriety of the return of the $290,000. Even if we assume the judge who granted summary judgment in Lewis's favor reached that conclusion for the wrong reasons, that determination may still stand if the right reasons call for the same result. <u>See</u> <u>Isko v. Planning Bd. of Livingston</u>, 51 <u>N.J.</u> 162, 175 (1968).

So, if we assume Hull was misled when he settled the first action, the question is whether that alleged fact permits Hull to retain the funds paid by Lewis in settlement. Clearly not, as Judge Perri correctly held. In similar circumstances, our Supreme Court has held that when a contract is procured through fraud, the

---

could have misled Hull when he settled the first case with Lewis in 2008.

[7] We are mindful that the final judgment also compelled Hull's payment of Lewis's counsel fees, but that aspect of the judgment was not appealed.

13                                                    A-2537-14T1

injured party must make a choice: rescind or affirm. <u>Merchants Indem. Corp. v. Eggelston</u>, 37 <u>N.J.</u> 114, 130 (1962). When rescinding, the injured party "must return what he received." <u>Ibid.</u> The injured party cannot choose both; only when choosing to affirm the contract, may the injured party retain the consideration and seek damages proximately caused by the deceit. <u>Ibid.</u> It is undisputed, and Hull argues even now, that he chose to rescind by unequivocally refusing to remediate the property and by refusing to indemnify and hold Lewis harmless. Having so chosen, Hull cannot retain the settlement proceeds. Accordingly, whether the summary judgment entered in favor of Lewis was based on a different or even incorrect analysis based on what was later learned or assumed, the outcome must be the same. For these reasons, and for substantially the reasons set forth by Judge Perri in her thoughtful oral decision, we affirm.

We would further add that we find no merit in Hull's arguments in his supplement brief that Lewis will now receive an unjust windfall or that the collateral source rule obligates his (Hull's) retention of the $290,000. Clearly, the results of this litigation do not provide Lewis with a windfall, merely the return of money paid to Hull in exchange for a promise Hull never kept; the only windfall that would occur here would be if Hull were allowed to retain those funds.

A-2537-14T1

Hull's argument about the collateral source rule is equally misguided. Although New Jersey's collateral source rule is a creature of legislation, and applies only to actions for personal injury or death, <u>N.J.S.A.</u> 2A:15-97, the point of the rule — even if we were to assume it had application here — is to prevent an injured party from obtaining a double recovery. <u>Perreira v. Rediger</u>, 169 <u>N.J.</u> 399, 409 (2001). In asserting Lewis would obtain a windfall or double recovery, Hull assumes those funds belong to Lewis's insurer not Lewis. Whether true or not — and we agree with Judge Perri that it is not likely so[8] — what becomes of the funds is a matter between Lewis and his insurer; in these circumstances, Hull has no standing to complain about the disposition of the funds.

We find no merit in any other argument that may be discerned from Hull's submissions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] The record presented on remand revealed that the insurer settled Lewis's claims against it by agreeing to fund Lewis's settlement with Hull. If the Lewis-Hull dispute never settled, there is no reason to believe the insurer would be entitled to the funds it agreed to convey because those funds were the consideration for the insurer's settlement of the claims asserted by Lewis against it.