**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1860-15T4

GMAC MORTGAGE, LLC,

    Plaintiff-Respondent,

v.

JESSICA L. PERYEA and MR.
PERYEA, husband of JESSICA
L. PERYEA,

    Defendants,

and

NICK and JOSEPHINE NISEVIC,

    Defendants/Interveners-
    Appellants.

_____

Submitted September 6, 2017 – Decided November 17, 2017

Before Judges Alvarez and Gooden Brown.

On appeal from the Superior Court of New
Jersey, Chancery Division, Bergen County,
Docket No. F-036302-08.

Ameri & Associates, LLC, attorneys for
appellants (Nina Ameri, on the brief).

Clark L. Cornwell, III, attorney for respondent GMAC Mortgage, LLC.

PER CURIAM

In this mortgage foreclosure action, third-party interveners, Nick and Josephine Nisevic, appeal from the November 25, 2015 Chancery Division order denying their motion to vacate a 2009 final judgment of foreclosure in favor of plaintiff GMAC Mortgage, LLC. The judgment was entered against defendant Jessica Peryea on property formerly owned by the Nisevics. The Nisevics claim they were the real owners of the foreclosed-upon property, which was sold at a Sheriff's sale in 2009. We affirm.

The record discloses that on January 11, 2007, the Nisevics conveyed ownership of the property to Denton Friedman for consideration in the amount of $480,000. On January 15, 2008, Friedman, in turn, conveyed ownership of the property to Peryea for consideration in the amount of $473,000. On the same date, Peryea executed a note in the amount of $378,400, secured by a mortgage on the property in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Mercury, Inc. The mortgage was recorded on June 10, 2008. On September 15, 2008, MERS assigned the mortgage to plaintiff, which possessed the note.

Peryea defaulted on the mortgage on June 1, 2008. Plaintiff filed a foreclosure complaint against Peryea on September 19, 2008, and obtained a default judgment after Peryea failed to file an answer. Final judgment was entered on June 23, 2009, and a Sheriff's sale was conducted on October 2, 2009. GMAC was the successful bidder and assigned its bid to Federal Home Mortgage Corporation (Federal). Federal then filed an application against the Nisevics for possession of the property, and on December 12, 2013, the trial court entered an order for ejectment. The order directed the Nisevics, who had continuously occupied the property, to vacate the property by January 20, 2014. The Nisevics subsequent application to vacate the December 12, 2013 ejectment order was denied.

Thereafter, pursuant to Rule 4:50-1, the Nisevics moved to vacate the final judgment of foreclosure entered against Peryea and set aside the Sheriff's sale. Following oral argument, Judge Menelaos Toskos denied the motion in a November 25, 2015 written opinion. The judge encapsulated the Nisevics' allegations thusly:

> The crux of the [Nisevics'] allegations is that they were defrauded by a scheme called "Rivertown", featured on the television show American Greed. According to the [Nisevics], several of the perpetrators are presently serving prison sentences. The [Nisevics] claim that Rivertown would provide financing to homeowners in distress by having the homeowners sign a deed over to Rivertown and

A-1860-15T4

then allegedly lease the homes back. Rivertown would place a mortgage on the premises. Again according to the [Nisevics], at this point the homeowners "felt they simply had a mortgage[,"] rather than having deeded the house away. The [Nisevics] allege that after payments were made to Rivertown, the home was to be transferred back to them. [The Nisevics] claim Rivertown would use straw buyers to apply for mortgages on the property. The straw buyers would sign documents to become members of Rivertown holding companies that received titles to the properties "but never spent any money required under the deals."

Here, the [Nisevics] allege that they executed a deed to Denton Friedman ("Friedman"), a Rivertown representative. Friedman then fraudulently transferred ownership to Peryea, a straw buyer. The deed that vested title to Friedman was recorded on March 4, 2008. The deed that vested interest to Peryea was recorded on June 10, 2008. Peryea took out four mortgages on the property and allegedly paid nothing towards them.

The mortgage owned by [p]laintiff was originally owned by Mercury, Inc. ("Mercury"). On January 15, 2008, Peryea executed a note in favor of Mercury for $378,400. Peryea executed a mortgage for the same amount in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Mercury ("MERS"). On September 15, 2008, Mercury assigned the mortgage to GMAC. The [Nisevics] claim that upon learning of the fraudulent scheme, the companies that owned the other three mortgages withdrew any claim to the property. The [Nisevics] contend that Mercury failed to notice the fraudulent scheme in its title search.

The [Nisevics] also contend that their former attorney, Louis A. Capazzi, Jr., Esq.,

committed malpractice and contributed to them losing their home. Allegedly, Mr. Capazzi is currently suspended and is the subject of an investigation by the Oradell Police Department. The [Nisevics] claim that Mr. Capazzi took over $100,000 from them, received compensation from [p]laintiff and Rivertown for the fraudulent scheme, and failed to show up to court on numerous occasions. The court ultimate[ly] issued an order for ejectment in favor of [p]laintiff. Mr. Capazzi advised the [Nisevics] to ignore all notices that they received, including the Notice of Ejectment, and that they should not come to court. The [Nisevics] are currently filing a malpractice claim against Mr. Capazzi.

Initially, Judge Toskos found that the Nisevics did not move to vacate the final judgment "within a reasonable time" as prescribed by Rule 4:50-2, because the "judgment [was] six years old." According to the judge, the Nisevics provided no explanation for the lengthy delay but offered only "general assertions[.]" Specifically, the Nisevics made "general assertions that they were conned by their attorney at the time, but they provide[d] no exhibits and no timeline as to when they hired Mr. Capazzi, how long he represented them, and the sequence of the events that led them to wait this long to move to vacate judgment." According to the judge, "[s]uch general assertions . . . must be reinforced by evidence; without support, the prejudicial impact of unavailable evidence, lost witnesses, and other such issues resulting from the

six[-]year lapse outweighs any benefit that might be derived from granting the [Nisevics'] motion."

Next, Judge Toskos evaluated the Nisevics arguments on the merits to determine whether relief was justified under Rule 4:50-1, but determined that the Nisevics "failed to show any meritorious defense." Rather, "[a]ll they do is point to their alleged victimization by con men and lawyers." The judge rejected the Nisevics' contention that service "only by publication . . . was inadequate notice[,]" rendering the final judgment defective. The judge noted that the argument was predicated on the premise "that they, and not Peryea, were the rightful owners of the property" and therefore should have been "named or served in the foreclosure complaint[.]" However, the judge rejected the Nisevics' assertion "that they were the true owners of the mortgaged premises[,]" in light of their admission "that they deeded the property over to Riverton[,]" and their failure to submit "copies of their mortgage and lease-back agreement" or any other document "to support their assertion[.]"

Judge Toskos also rejected the Nisevics' claim that the mortgage was fraudulent, noting that "[a] fraudulent deed does not affect the rights of a bona fide third[-]party purchaser." The judge explained further:

[The Nisevics'] pleadings of a fraudulent mortgage appear to be mistaken. [The Nisevics] may have been improperly induced into deeding away the property at issue, but no mortgage was executed by [the Nisevics] in return for said deed. [The Nisevics] state that they "felt they simply had a mortgage" after they deeded their home over to Rivertown. This feeling, however, is not legally binding, and no such mortgage existed. Indeed, just the opposite is true, as the [Nisevics'] original mortgage was in fact paid off. Since that time, moreover, [the Nisevics] have lived without having to make mortgage payments or, it appears, tax payments on the property. Thus, although [the Nisevics] may have been duped out of the deed to the property, it bears mentioning that the [Nisevics] also derived a benefit. Additionally, their argument that "Friedman never had possession to vest title to Peryea making the transfer fraudulent" is incorrect. The [Nisevics] likely confused the dates, as their own papers state that Friedman recorded on March 4, 2008 and Peryea recorded on June 10, 2008.

The judge concluded:

This paucity of evidence is insufficient to convince the [c]ourt that equitable concerns justify vacating the judgment as requested. There is no indication given that, even if the judgment were vacated, [the Nisevics] would be able to pay the loan at this time. The lack of evidence presented to the court precludes granting the relief sought by [the Nisevics]. [The Nisevics] have lived in the property rent-free for nine years. They have clearly benefited by having the original loan paid off, and to vacate this judgment in their favor would clearly be prejudicial and inequitable to the [p]laintiff.

A memorializing order was entered and this appeal followed.

A-1860-15T4

On appeal, the Nisevics renew their argument that "the default judgment should be set aside" because they "were not personally served, but were served only by publication." They also reiterate that "the bank . . . gave a mortgage on a property that the seller did not own at the time according to the recording dates." We reject these arguments and affirm substantially for the reasons set forth in Judge Toskos' cogent and well-reasoned written opinion. We add the following comments.

Under Rule 4:50—1, the trial court may relieve a party from a final judgment for the following reasons:

> (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.
>
> [R. 4:50-1.]

Generally, a party seeking to reopen a default judgment must show "that a meritorious defense is available." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 284 (1994).

Motions made under Rule 4:50-1 must be filed within a reasonable time. R. 4:50-2; see also Deutsche Bank Trust Co. Ams. v. Angeles, 428 N.J. Super. 315, 319 (App. Div. 2012). Motions based on Rule 4:50-1(a), (b), and (c) must be filed within a year of the judgment. Angeles, supra, 428 N.J. Super. at 319. However, the one-year limitation for subsections (a), (b), and (c) does not mean that filing within one year automatically qualifies as "within a reasonable time." Orner v. Liu, 419 N.J. Super. 431, 437 (App. Div.), certif. denied, 208 N.J. 369 (2011); R. 4:50-2. "[T]he one-year period represents only the outermost time limit for the filing of a motion based on Rule 4:50-1(a), (b)[,] or (c). [All] Rule 4:50 motions must be filed within a reasonable time, which, in some circumstances, may be less than one year from entry of the order in question." Orner, supra, 419 N.J. Super. at 437.

A motion for relief under Rule 4:50-1 should be granted sparingly and is addressed to the sound discretion of the trial court, whose determination will not be disturbed absent a clear abuse of discretion. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). "[A]buse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v.

Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial court's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Guillaume, supra, 209 N.J. at 467. Here, we discern no abuse of discretion.

The Nisevics raise additional arguments in their reply brief. However, "raising an issue for the first time in a reply brief is improper." Goldsmith v. Camden Cnty. Surrogate's Office, 408 N.J. Super. 376, 387 (App. Div.) (quoting Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div.), certif. denied, 168 N.J. 294 (2001)), certif. denied, 200 N.J. 502 (2009); see also L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div.), certif. denied, 218 N.J. 273 (2014). Similarly, it is improper for a party to use a reply brief to enlarge an argument asserted in the merits brief. State v. Smith, 55 N.J. 476, 488, cert. denied, 400 U.S. 949, 91 S. Ct. 232, 27 L. Ed. 2d 256 (1970). Thus, we decline to consider those arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1860-15T4