**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2947-22

AGUSTIN GARCIA,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

> Argued August 27, 2024 – Decided September 10, 2024
>
> Before Judges Gooden Brown and Marczyk.
>
> On appeal from the New Jersey Department of Corrections.
>
> Agustin Garcia, appellant, argued the cause pro se.
>
> Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Christopher C. Josephson, on the brief).

PER CURIAM

Appellant Agustin Garcia, an East Jersey State Prison (EJSP) inmate, appeals from final decisions by the New Jersey Department of Corrections (DOC) denying his requests for credit for wage deductions from his inmate trust account, which deductions he claims are in excess of the allowable amount and are impermissible. Specifically, Garcia appeals from denials dated February 28 and March 14, 2023.[1] We affirm.

By way of background, N.J.A.C. 10A:6-2.7(h) authorizes DOC to deduct payment for photocopying legal materials directly from a non-indigent inmate's trust account.[2] If the balance in the non-indigent inmate's account is overdrawn or insufficient to pay the cost of photocopying legal materials, the correctional facility shall "[c]harge the nonindigent inmate's account the amount owed the correctional facility," N.J.A.C. 10A:6-2.7(c)(2), and be reimbursed by "[r]emov[ing] from the nonindigent inmate's account any amount of funds in excess of the one[-]time monthly amount of $15.00 after deductions to pay court

---

[1] In an amended notice of appeal filed July 19, 2023, Garcia added a DOC response dated May 10, 2023. However, the May 10, 2023, response was neither the subject of an administrative appeal, included in the statement of items comprising the record on appeal, see R. 2:5-4(b), nor the subject of a motion to supplement the administrative record, see R. 2:5-5(b). We therefore decline to consider it.

[2] N.J.A.C. 10A:6-2.5(a) requires DOC to "provide photocopies of legal material . . . to inmates at the rate of $.10 per page[.]"

ordered penalty assessments, restitutions, fines or other revenue obligations[,]" N.J.A.C. 10A:6-2.7(h)(1).

In 2023, Garcia owed approximately $23,000 in legal photocopying loans. On February 25, 2023, Garcia submitted in inmate inquiry form stating:

> This is to complain about the fact that since I started working in [the] kitchen I never enjoyed one cent of my earning bec[a]use instead of deducting the percentage dictated by 10A you are deducting 100% . . . , leaving me with the[] $15.00 minimum I would receive whether I work or not. This violate [sic] my rights. Please take corrective action retroactively.

On February 28, 2023, an EJSP employee responded that "[l]oans, fines, and/or obligations are paid back once funds are available. Payroll has a 33% charge to pay back loans, fines, and/or obligations." In a grievance form of the same date, Garcia replied that the response was "incorrect" because DOC could only deduct a maximum of 33% of the funds in his account to pay towards his obligations, including his photocopying loans. Garcia stated that, instead, DOC was "deducting 100%" throughout his "entire period of . . . employment as [a] kitchen worker," leaving him a "monthly balance of $15.00." He requested a "recalculation" and a "credit" for the allegedly excessive deductions. On March 13, 2023, Shaletta Smalls, another EJSP employee, responded to Garcia's grievance, stating that "[t]he Business Office doesn't control the automatic

deductions for [his] obligations" and "[o]nce all [his] obligations are fulfilled [he] won't have any deductions."

On March 14, 2023, Garcia administratively appealed the initial response, reasserting his claim that DOC could only deduct a maximum of 33% of the funds in his account to pay his obligations, including his photocopying loans, and that the deduction of "100% of [his] salary or wages month after month" violated "10A and also . . . [his] equal protection [rights] under the law guaranteed by U.S. and New Jersey constitutions, whereas, [he was] treated different to prisoners or individual[s] similarly situated." He again requested that DOC credit his account "retroactively." On the same date, Smalls responded to Garcia's appeal, stating:

> After reviewing your account, we noticed that you are paying back loans for copies. All loans are paid back at 100% at the time you receive funds in your account. Please review your statement carefully and you will see the loans and fines being deducted.

In this ensuing appeal, Garcia reprises his claim that DOC has been deducting an excessive amount of funds from his inmate trust account and seeks retroactive credits. We find no merit to Garcia's contentions.

Our role in reviewing an administrative agency decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010); In

4

re Taylor, 158 N.J. 644, 656 (1999). Such decisions carry with them a "presumption of reasonableness[,]" Lisowski v. Borough of Avalon, 442 N.J. Super. 304, 330 (App. Div. 2015), (citation omitted), and will be disturbed "only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

To determine whether an agency action is arbitrary, capricious, or unreasonable, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Carter, 191 N.J. 474, 482 (2007) (quoting Mazza v. Bd. of Tr., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

As such, we are not "relegated to a mere rubber-stamp of agency action," but rather "are constrained to engage in a 'careful and principled consideration of

5

the agency record and findings.'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (citations omitted).

We defer to the agency's interpretation of regulations that are "within its implementing and enforcing responsibility[.]" Utley v. Bd. of Review, 194 N.J. 534, 551 (2008) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). However, we are "in no way bound by the agency's . . . determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). Thus, we may intervene when an agency's decision rests upon a misinterpretation of a regulation. Mazza, 143 N.J. at 25.

Here, we discern no basis to intervene. DOC's denial of Garcia's requests was neither arbitrary nor capricious but comported with the law. Contrary to Garcia's claim, there is no limitation on the percentage of funds DOC may deduct from an inmate's account to pay outstanding legal copying loans as long as $15 per month remains in the inmate's account. See N.J.A.C. 10A:6-2.7(h).[3]

_____

[3] N.J.A.C. 10A:6-2.7(h) applies to non-indigent inmates like Garcia. In his merits brief, Garcia acknowledges that he is not an indigent inmate, having earned wages "working in [the] kitchen." See N.J.A.C. 10A:1-2.2 (defining an "indigent" inmate as one "who has no funds in his or her account and is not able to earn inmate wages due to prolonged illness or any other uncontrollable circumstances, and who has been verified as having no outside source from which to obtain funds"). However, in his reply brief, for the first time on appeal, Garcia claims indigency. It is improper for a party to use a reply brief to raise

A-2947-22

In his repeated submissions to DOC, Garcia concedes that he was only left with a "monthly balance of $15.00." Although DOC is limited in the amount it can deduct from an inmate's account to pay towards certain debts and obligations, no such limitation applies to legal copying loans. See N.J.S.A. 30:4-92 (limiting withdrawals from inmate accounts "in an amount not to exceed one-third of the inmate's total income, as may be required to pay any assessment, restitution or fine ordered as part of any sentence," or "to pay costs and fees charged or owing" for any medical care provided during the inmate's incarceration in accordance with N.J.S.A. 30:7E-2).

For the first time on appeal, Garcia asserts that DOC retaliated against him for complaining about his deductions by removing him from his prison job and changing his housing status.[4] He also claims DOC violated his due process rights by providing untimely and unresponsive responses to his inquiry and grievance. "Normally, we do not consider issues not raised below at an administrative hearing." In re Stream Encroachment Permit, Permit No. 0200-

---

an issue for the first time or enlarge an argument asserted in the moving brief. See, e.g., State v. Smith, 55 N.J. 476, 488 (1970); L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014).

[4] Notably, included in Garcia's appendix is his voluntary "resign[ation] from [his] kitchen job detail" because of medical conditions and to facilitate a housing "relocation."

04-0002.1 FHA, 402 N.J. Super. 587, 602 (App. Div. 2008) (citing Bryan v. Dep't of Corr., 258 N.J. Super. 546, 548 (App.Div.1992)). Generally, we decline to consider such issues unless they go to jurisdiction or concern matters of great public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (citation omitted). Neither is implicated here. Even if we considered the arguments, we are satisfied Garcia received all due process protections to which he was entitled, and his claims to the contrary are unsupported.

To the extent we have not addressed any of Garcia's arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2947-22